[No. 15834. Department Two.—July 17, 1896.]

## CALIFORNIA POWDER WORKS, APPELLANT, v. ATLANTIC & PACIFIC R. R. CO., RESPONDENT.

COMMON CARRIER—AGENCY FOR SHIPMENT—IMPLIED AUTHORITY OF AGENT —TERMS OF SHIPMENT.—An agent who is employed by the owner or consignor of goods to procure them to be transported by a common carrier has a general and implied authority to make an agreement with the carrier as to the terms upon which the goods are to be transported.

ID.—SHIPMENT OF GUNPOWDER—AGENCY OF DRAYMEN—LIMITATION OF LIABILITY—LOSS BY FIRE.—Where a drayman whose habitual duty it was to haul gunpowder to a depot for shipment, had also authority to

ship it for the powder company to its destination, such drayman had authority to sign a shipping order limiting the liability of the railroad company against loss of the gunpowder by fire, and where such shipping order conformed to the requirements of section 2176 of the Civil Code, it relieved the carrier from liability to the powder company from any loss by fire, not resulting from the negligence of the railroad company.

ID.—DANGEROUS SHIPMENTS—OBLIGATION OF CARRIER—EXEMPTION FROM LIABILITY — CONSIDERATION — TRANSPORTATION OF GUNPOWDER. — A common carrier is not bound to receive goods in a defective or dangerous condition, nor to ship dangerous articles, such as nitro-glycerine, dynamite, gunpowder, aquafortis, oil of vitriol, or matches; and it being optional with the carrier whether he will ship such articles or not, he may accept the shipment upon such terms and with such limitation of his common-law liability as he sees fit; and the reception and transportation of gunpowder by a railroad company is a sufficient consideration for a shipping order releasing the railroad company from loss thereof caused by fire; and from the nature of the goods, the consideration expressed in the shipping order is sufficient to support the entire contract.

ID.—CONSTRUCTION OF EXEMPTION—NEGLIGENCE—FINDINGS.—Where gunpowder is shipped, a shipping order exempting the railroad company from loss of it by fire from any cause, must receive a reasonable construction, and will be construed as exempting the railroad company from loss by fire occasioned by any cause other than the defendant's negligence; and when the findings are against the existence of any negligence causing the fire, the exemption will be enforced.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. SEAWELL, Judge.

The facts are stated in the opinion of the court.

*E. S. Pillsbury,* and *F. D. Madison,* for Appellant.

*C. N. Sterry,* and *William F. Herrin,* for Respondent.

HENSHAW, J.—Plaintiff brought its action to recover from defendant the value of a carload of blasting powder destroyed while in transit upon defendant's railroad.

The findings are not attacked. It is claimed, however, that they do not support the judgment. It is also contended that the court erred in admitting in evidence a certain shipping order.

The facts disclosed by the findings are the following: Plaintiff was a manufacturer of powder; its factory was situated at Santa Cruz, California. It had for many

years been in the habit of shipping its products over the line of the Southern Pacific Company, and of the Atlantic & Pacific Railroad Company, defendant herein. When the shipment was designed for a point upon the line of the defendant company, the powder was received by the agent of the Southern Pacific Company at San Jose, acting for the defendant company, and by this agent a shipping order was taken and a bill of lading returned therefor. Santa Cruz, the place of manufacture of the powder, is connected with San Jose by a narrow gauge railroad owned or controlled by the Southern Pacific Company. At San Jose the depots of the narrow gauge railroad and of the broad gauge railroad, over which the powder was shipped for exportation without the state, were some distance apart. By reason of the haul upon the streets of San Jose from one depot to another, thus necessitated, the Southern Pacific Company declined to accept a through shipment of the powder from Santa Cruz, and, under special contract with plaintiff, the powder was shipped to San Jose, there transferred by an agent under the control of the plaintiff from the narrow gauge depot to the broad gauge station, and, by this agent, placed upon suitable cars provided, and shipped to its ultimate destination.

"At the time of the shipment of the powder in controversy, and for several years prior thereto, the plaintiff had always employed one John McNally, who was a common drayman at San Jose, to haul all the powder which the plaintiff had transported to San Jose over the narrow gauge railroad, and which was destined for points on the Southern Pacific or the Atlantic & Pacific, from the narrow guage railroad to the Southern Pacific, and to there ship it for the plaintiff to its destination; the course of business being that the secretary of the plaintiff company at San Francisco, who had charge of the shipping business of the plaintiff, would in the case of each of said shipments write to McNally that the shipment was made from Santa Cruz, and for him to transfer it to the broad gauge depot, and there ship it to its

point of destination, instructing him to what point and the name of the consignee, and sending him with his instructions a directed envelope within which to inclose the bill of lading and mail it to the company at San Francisco, or to hand the envelope to the railroad agent and have him mail it to the company."

" McNally, on receiving such instructions, would receive the powder from the narrow gauge railroad and haul it upon his drays to the broad gauge depot, and there load it himself into such car or cars as the Southern Pacific agent would designate, and, upon its being loaded, would fill out a shipping order upon printed blank forms furnished by the agent of the Southern Pacific for such purpose; these blank forms were all exactly alike for all kinds of goods. . . . . Upon delivery of such shipping order to the agent of the Southern Pacific filled out and signed, such agent would have the property checked, and, if correct, would ship bill of lading, which would either be delivered to McNally, and by him sent to the company at San Francisco, or McNally would deliver to the agent an envelope directed to plaintiff company, and the agent would inclose bill of lading in the same and forward it to plaintiff. Each of these methods was pursued indiscriminately. The shipping order was retained by the agent of the railroad company and kept in his office, and neither it nor a copy of it would be delivered to the agent or McNally, but would always be signed in the name of the plaintiff by McNally."

For several years previous to the shipment in question plaintiff had shipped over the Southern Pacific in this manner a great deal of powder, on an average from one to two or more carloads per month. The defendant never in any way objected to taking the powder, on the ground that it was a dangerous article, and that it was not bound to carry it, nor did the defendant at any time, in any way, declare to plaintiff or to the said drayman that it would take the powder only as a private carrier. It required McNally in each instance to sign the ship-

ping order. The plaintiff in the case of each of said shipments would advise McNally of the same and direct him where to ship the powder, and the secretary would, in due course of time, receive the bill of lading. None of the officers of plaintiff's company ever authorized McNally to sign any shipping orders, or ever had any actual knowledge of the fact that he was signing such orders, or had actual knowledge that the defendant ever claimed that there was any different contract between them than that contained and expressed in the bill of lading. The conditions in the bill of lading are identical with those of the shipping order.

Defendant's agent at San Jose had no authority to receive the goods except upon the signing of such a shipping order, and such agent would not have received or accepted the goods unless such a shipping order was delivered to him properly signed.

There was, during all of the time, but one rate on powder, and no one could have procured the shipment of any powder over either of said railroads without said: shipping order signed and such bill of lading issued, the agents of both companies being furnished with but one form of shipping order and one form of bill of lading for all goods and merchandise, and having no authority to receive goods for shipment on any other terms.

The preceding quotations are from the findings which are not attacked. The powder in question was shipped in the manner indicated. It exploded while in transit, in the territory of Arizona, entirely destroyed the car in which it was placed, partially destroyed two other cars and their contents, and killed two men upon the train. The immediate cause of the explosion is unknown, but it is found that it was occasioned by fire communicated in some way to the powder. It is also found that the defendant was not guilty of any negligence or misbehavior in the matter.

The views which we take, and which will hereafter be expressed, render unnecessary the consideration of many questions ably and elaborately presented by respective

counsel. They will be passed by, not as being unimportant, but as being unnecessary to this determination. Thus, we will not consider whether the bill of lading issued by the defendant to plaintiff, and by the plaintiff retained without protest, constitutes a unilateral contract binding upon plaintiff. Nor will we consider the question whether section 2176 of the Civil Code, defining the mode in which common carriers' liability may be limited, is or is not applicable to contracts with defendant, or is or is not applicable to any contract not wholly to be performed within the state as being an unwarranted and illegal interference with, and restriction upon, the exclusive right of Congress to regulate interstate commerce. For we are of the opinion that the shipping order signed in the name of the plaintiff by McNally as its agent was a contract within the scope of his authority to make, and therefore binding upon the plaintiff. This order conformed to the requirements of section 2176 of our Civil Code, and, as it released the defendant corporation from liability for loss occasioned by "fire from any cause whatsoever," its admission in evidence was proper, and its·proof relieved the defendant of liability.

The finding of the court, as above quoted, is to the effect that McNally was the authorized agent of plaintiff, not merely to haul the powder as a common drayman, but "to ship it for the plaintiff to its destination." The circumstance that he was in fact a common drayman, and that defendant's agent knew him to be such, does not militate against the force of this declaration. There was nothing inconsistent in the agency to haul as a drayman, with the agency to ship as representative of the consignor. Any competent person, regardless of his professional or business vocation, might have been employed by plaintiff to ship for it. There is here no question of ostensible agency, or of a failure of defendant to make due inquiry as to the scope of the powers of the agent. The finding expressly declares that McNally was employed to ship.

.Having this power, he was entitled to make a special contract of shipment, as was done in this case. An agent who is employed by the owner or consignor of goods to procure them to be transported by a common carrier, has a general and implied authority to make an agreement with the carrier as to the terms upon which the goods are to be transported. (*Christenson* v. *American Exp. Co.*, 15 Minn. 270; *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344; *Nelson* v. *Hudson River R. R. Co.*, 48 N. Y. 498; *Zimmer* v. *New York Cent. etc. R. R.*, 33 N. E. Rep. 642; *Van Schaack* v. *Northern Transp. Co.*, 3 Biss. 394; *Aldridge* v. ·*Great Western Ry. Co.*, 15 Com. B. Rep. 582; *Jennings* v. *Grand Trunk Ry.*, 127 N. Y. 438; *Illinois Cent. R. R. Co.* v. *Jonte*, 13 Brad. 424; *Squire* v. *New York Cent. R. R. Co.*, 98 Mass. 239; Hutchinson on Carriers, sec. 265; Wheeler on Carriers, c. 13, sec. 2.)

Nor are the exemptions contained in the contract of the shipping order void for lack of consideration. The defendant was not obliged to receive and transport the powder at all. A common carrier is not bound to receive goods which are so defectively packed that their condition will entail upon the company extra care and extra risk; nor dangerous articles, as nitro-glycerine, dynamite, gunpowder, aqua fortis, oil of vitriol, matches, etc. (3 Wood's Railway Law, sec. 426; Hutchinson on Carriers, sec. 113; 2 Rorer on Railroads, sec. 1231; *Pfister* v. *Central Pac. R. R. Co.*, 70 Cal. 169; *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Lake Shore etc. R. R. Co.* v. *Perkins*, 25 Mich. 329.) It was thus optional with the defendant to accept the powder for transportation or not; but, if it chose to accept it, it could do so upon such terms, and with such limitation of its common-law liability, as it saw fit. (*Piedmont Mfg. Co.* v. *C. & G. R. R., Co.*, 19 S. C. 353.) And from the nature of the goods the consideration expressed was sufficient to support the entire contract. (*York Co.* v. *Central R. R.*, 3 Wall. 107.)

The term of exemption releasing the carrier from liability for fire from any cause whatsoever will not be

held void as unconscionable or unreasonable. It is well settled that a common carrier may not relieve itself from any liability imposed upon it by law under the dictates of public policy, but, upon the other hand, upon any question of private right, or the right of private property, it may, for a consideration, lessen the degree of responsibility which attaches to it as an insurer, by any contract not in itself unreasonable. Anyone may waive the advantage of a law intended solely for his own benefit, but a law established for a public reason cannot be contravened by private agreement. (Civ. Code, sec. 3513.) If necessary, the condition above referred to would be construed as an exemption from liability by fire occasioned by any cause, other than that of defendant's negligence. (*Hooper* v. *Wells*, 27 Cal. 12; *New Jersey Steam Nav. Co.* v. *Merchants' Bank, supra; Bank of Kentucky* v. *Adams Exp. Co.*, 93 U. S. 174; *Wells* v. *Steam Nav. Co.*, 8 N. Y. 375.)

The conclusion having been thus reached that the contract of the shipping order made by plaintiff's agent, McNally, was authorized, that it was based upon a consideration, and that its terms were reasonable, the other propositions urged, as above stated, are rendered unnecessary of determination.

The judgment appealed from is affirmed.

TEMPLE, J., and MCFARLAND, J., concurred.