MARGARET LINDEN, ADMINISTRATRIX OF THE ESTATE OF JAMES LINDEN, DECEASED, PLAINTIFF AND APPELLANT *v.* THE ANCHOR MINING COMPANY, A CORPORATION, DEFENDANT AND RESPONDENT.

PERSONAL INJURIES — ACTION FOR DAMAGES — PAYMENT OR RELEASE NOT PLEAD — ERROR TO ADMIT EVIDENCE AS TO GENEROSITY OF DEFENDANT. CONTRIBUTORY NEGLIGENCE — RULE AS TO BURDEN OF PROOF—INSTRUCTION IN VIOLATION OF RULE — NOT CURED BY CONTRARY INSTRUCTION. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — UNCERTAINTY — QUESTIONS OF FACT FOR JURY.

*Personal Injuries — Action for Damages — Payment or Release not Plead—Error to Admit Evidence as to Generosity of Defendant.*
   In an action for damages for the killing of plaintiff's husband, where there is a sharp conflict in the testimony on material issues, and where neither payment nor release are pleaded, it is error to admit evidence of defendant's generosity in taking up a collection for her benefit, as such evidence would naturally have a tendency to influence the jury to some extent in favor of defendant, and draw their minds away from the main issues in the case.

*Contributory Negligence — Rule as to Burden of Proof — Instruction in Violation of Rule—Not Cured by Contrary Instruction.*

> The rule is well settled, that in an action for damages for personal injuries or death, the burden of proving contributory negligence is on the defendant, and the plaintiff is not required to prove the absence of contributory negligence on his part, and the erroneous effect of an instruction in violation of the rule is not neutralized by an inconsistent and contradictory instruction unduly favorable to plaintiff.

*Negligence — Contributory Negligence — Uncertainty — Questions of Fact for Jury.*

> Where there is an uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law but of fact, and to be settled by the jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair minded men will honestly draw different conclusions from them.

(Decided June 27, 1899.)

Appeal from the Third District Court, Summit County, Hon. A. G. Norrel. *Judge.*

Action by Margaret Linden as administratrix to recover damages for the death of her husband, who was fatally injured while in the employ of defendant company. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Messrs. Powers, Straup and Lippman,* for appellant.

It is the master's duty to exercise reasonable care to provide his servant a reasonably safe place in which to work. the performance of this duty cannot be effected by the simple giving of an order—by its execution being entrusted to another. Until the agent thus selected and empowered in fact acts up to the limit of the duty of his master to act, the master's duty is not done. The master's duty requires performance. He may, at his option perform in person or

delegate performance to another. In either case reasonable care must be exercised in the doing of the act required to be done by the master. *McElligott* v. *Randolph*, 29 Am. St. Rep., 181, and cases there cited. Wood, Master and Servant, p. 871.

This duty the master cannot delegate so as to be relieved from liability. *Carter* v. *Oliver Oil Co.*, 27 Am. St. Rep., 815; *Ell* v. *N. P. R. R.*, 26 Am. St. Rep., 621 and note; *Higgins* v. *Williams*, 114 Cal. 176; *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. 294; *A. T. & F. R. R.* v. *Seeley*, 37 Pac. 104; *Lewis* v. *Seifert*, 2 Am. St. Rep., 631; *Anderson* v. *Minn. Co.* (Utah), 50 Pac. 815; Bishop Non-Contract Law, Sec. 648.

The court erred in giving paragraph III. of its charge. In said charge the court cast the burden of proof on plaintiff to prove among other things that the deceased "did not know it was unsafe and could not have known it by the exercise of reasonable care for his own safety;" and that the deceased was killed "without any fault on his part, and while he was taking due and proper care for his own safety." The said paragraph does not correctly state the law. It cannot longer be an open question in this State that in cases of negligence occasioning personal injury or death, the plaintiff is not required to prove in the first instance his freedom of negligence or that of his intestate. So repeatedly has it been declared that contributory negligence is matter of defense and the burden of proving it is upon the defendant, that the citation of authorities should not be necessary. *Anderson* v. *Ogden Ry. and Depot Co.*, 8 Utah 128; *Smith* v. *Occidental, etc. Steamship Co.*, 99 Cal. 462; *Daly* v. *Hinz*, 113 Cal. 366; *Nelson* v. *City Helena*, 16 Mont. 21 (39 P., 905); *MacDougall* v. *Con. R. R. Co.*, 63 Cal. 431; *Bowers* v. *R. R.*, 4 Utah 224.

Deceased's knowledge of the chute and his means of knowledge are matters of defense and the burden is upon respondent to prove such defense.   Especially when alleged in the answer with such particularity as was done. *Alexander* v. *C. L. & M. Co.*, 104 Cal., 532.   This instruction was prejudicial.   *Bjorman* v. *Fort Bragg Redwood Co.*, 104 Cal. 626.

The charge of the court limited the jury as elements of damage to only the age of deceased, his physical condition and his capacity to earn wages.   The court excluded from the jury all questions of probable length of life; his mental capacity; and his habits, a most important element of damage; and loss of comfort, society, and companionship, all of which are proper elements of damages.   *Wells* v. *Railway Co.*, 7 Utah 482; *Hyde* v. *Railway Co.*, 7 Utah 356; *Pool* v. *Railway Co.*, 7 Utah 303; *McHugh* v. *Schlosser*, 39 Am. St. Rep., 699; *Pepper* v. *Ry. Co.*, 105 Cal. 389; *Walker* v. *McNeil*, 50 P. 518 (17 Wash. 582); *Woodward* v. *Ry. Co.*, 4 Colo.; *Pierce* v. *Conners*, 37 Pac. 721; *Beeson* v. *Green Mountain Manf. Co.*, 57 Cal. 20; *Cook* v. *Clay Street Ry. Co.*, 60 Cal. 604; *Cleary* v. *City R. R.*, 76 Cal. 240; *Munro* v. *Dredging Co.*, 84 Cal. 515; *Blackwell* v. *Moorman and Co.*, 111 N. C. 151, (17 L. R. A. 729); *Coley* v. *Statesville*, 121 N. C. 301; *Strother* v. *R. R.*, 25 S. E. 272; *Baltimore & P. R. R. Co.* v. *Mackey*, 157 U. S. 72 (39 L. ed. 624); *St. Louis, etc. R. R.* v. *Moddoy*, 21 S. W. 472; *Skottowe* v. *R. R.*, 30 Pac. 222; *Mugg* v. *R. R.*, 31 N. E. 564.

*Messrs. Brown & Henderson*, for respondent.

When an employee has knowledge of a situation which is dangerous if not properly guarded against and forgets it, and, by reason of such forgetting, some accident happens to him, he cannot recover.   *Wallace* v. *Central*

*Vermont R. R. Company,* 63 Hun. 632, 635; Black on
Cont. Neg., p. 40; *Lake Shore R. R. Company* v. *Mc-
Cormick,* 74 Ind. 440; *Bruker* v. *Covington,* 69 Ind. 34,
35 Am. R. 202; *Brossman* v. *R. R. Company,* 133 Pa.
St. 490; *Baltimore, etc., R. R. Co.* v. *Whitacre,* 35
Ohio State 627; *Gilbert* v. *Guild,* 144 Mass. 601; *Sul-
livan* v. *India Manufacturing Co.,* 113 Mass. 398;
*Sanborn* v. *M. F. T. Co.,* 70 Cal., 261.

The court did not charge, as alleged, that the burden of
proof was upon the plaintiff to show contributory negli-
gence, but upon the contrary, that the burden of proof
was upon the defendant, in which he says, "before you
find the deceased guilty of contributory negligence, you
must be satisfied by a preponderance of the evidence that
he failed to observe that degree of care and caution that
an ordinary prudent person, engaged in the same business
and under like circumstances, would have used." It
must be remembered, however, that the rule requiring
the burden of the proof to contributory negligence to be
upon defendant, only applies where the evidence on the
part of the plaintiff does not disclose it. Where the evi-
dence on the part of the plaintiff does disclose contributory
negligence (and it does in this case), then the plaintiff
cannot recover as a matter of law, and the burden is not
changed to the defendant. *Bowers* v. *R. R. Co.,* 4 Utah,
224; *Smith* v. *Occidental Steamship Co.,* 99 Cal. 462;
*McDougal* v. *Con. R. R. Co.,* 63 Cal. 431.

I purposely cite the cases referred to by counsel him-
self.

The whole subject is carefully explained in *Baltimore
& P. R. R. Co.* v. *Whitacre,* 35 Ohio St. 627.

### STATEMENT OF FACTS.

Margaret Linden brought this action as administratrix

to recover damages for the death of her husband, James Linden, who was fatally injured in the employ of and while at work for defendant in its mine.

The complaint in substance alleges: That on October 11th, 1892, the date of the alleged accident, and for a long time prior thereto, the defendant in operating its mine used a certain chute which was located in the middle of one of the car tracks in the mine. That at the time of the accident and for a long time prior thereto, defendant knowingly, negligently, and carelessly left said chute unguarded, unprotected, and without any lights or signals or warnings of danger. That James Linden while engaged in the employment of his duties and while passing along said track not knowing of the existence of or location of said chute, fell and was thrown into said chute from which he sustained severe internal injuries, and from which injuries he thereafter, on October 18, 1892, died. The answer denies the allegations of the complaint charging negligence, and alleges contributory negligence on the part of the defendant, and that he knew of the existence and location of the chute. The facts were submitted to the jury who found for defendant, no cause of action. Plaintiff appeals.

It appears from the record that decedent was at the time of the accident, and for eighteen months immediately prior thereto had been in the employment of the defendant as a miner, and about a year before he was injured, built the chute mentioned in the complaint. The opening of the chute was in the middle of a car track, and was used to convey ore and waste material taken from a stope in the mine where decedent worked, to the level below. The rails of the track mentioned were about sixteen inches apart and were laid between the timbers of the mine, which timbers were about four and one-half feet apart. The

drift or tunnel was about five feet wide at the mouth of the chute. The opening of the chute was about one foot one way and three and one-half feet the other. Soon after the chute was constructed a covering was provided for it by defendant to prevent accidents to its employees when the chute was not in use. It was not practicable to use the covering when the chute was in use, as ores and waste material were dumped into it every few minutes. There was an air shaft connecting the stope with the tunnel level above, through which shaft the decedent went to and returned from his work. There is a conflict in the testimony as to the length of time decedent had been at work in the stope immediately preceding the accident. One of the plaintiff's witnesses who worked in the stope and removed the ores and material extracted by decedent testified that the decedent James Linden had worked in the stope referred to only a few days prior to the accident.

Defendant's witnesses testified that he had worked there a month or six weeks before the accident. During the time he worked in the stope he was compelled to pass along the track mentioned and by and over the chute four times each day. And in addtion to these regular trips he frequently passed the chute when going for and returning with tools. He worked somewhere from twenty-five to forty feet from the chute, and from eight to fourteen feet above it. He was an experienced and skilled miner, and his work consisted of drilling, blasting and breaking down ore and waste material in the stope. Car men removed the material thus extracted and with ore cars conveyed and dumped it into the chute. Three eight-hour shifts were employed in this stope. Decedent and the other miners who worked in this stope usually fired their blasts on going to lunch and at the end of each shift. A blast in the stope would extinguish a lighted candle stationed at

the chute. When the miners went on shift and returned to their work after lunch the light, if any had been left burning at the chute was generally out. Plenty of candles were kept at the mouth of the tunnel, and decedent and other employees helped themselves and took what they wanted. It was the custom of the foreman of the mine to go through and inspect the mine twice each day. On the day of, and just after the accident, he made an examination of the stope and chute and found about five inches of candle inserted between two nails near the mouth of the chute, and a board (covering for chute) leaning up against a post at the side. The last time that decedent was seen prior to the accident, he was preparing a blast just before starting for lunch. A short time afterwards he was found on the level below at the bottom of the chute. His skull was fractured, and his body otherwise badly bruised, from which injuries he soon afterwards died. Testimony was introduced by plaintiff that tended to show that defendant failed to keep a light burning at the chute, and also failed to keep the chute covered when not in use.

Frank McDonald, one of the plaintiff's witnesses who was a shoveler and car man, testified on this point as follows: "On the 11th of October, 1892, there were no lights about the chute. There were only what the miners themselves used. There was no covering at the chute. There were no guards nor signals at all to indicate the location of the chute. I never saw any covering at the chute at all. I was at work at that level and about the mine from March up to the time of the accident, and none of those times did I see any light or covering at the chute. * * * When I quit my shift I left the mouth of the chute without any light. When I entered upon my shift I did not draw candles to put there. I had candles but never put them there because I had no reason (cause) and

there never was any there. I was not ordered to put candles there. I did not put a candle at the chute because I was not ordered to do it." Plaintiff introduced other testimony that tended to show that at the time of the accident, and for a long time prior thereto, the chute had frequently been left without a light and uncovered when not in use. Richard Williams, who was foreman of the mine prior to and at the time of the accident, was called by defendant and testified that he went through the mine twice each day. A couple of hours before the accident, he was in the stope but could not say positively whether there was or was not a light at the chute. Patrick Powers, another witness for defendant, testified: "I was running cars for the same shift on which Linden was at work. * * * Had been running cars in that drift about a month or six weeks. * * * I received orders on the subject of having a light at the top of the shaft from the shift boss and foreman. It was to keep a light there. * * * It was my duty to see that a light was kept at the chute, but I do not know whether a light was there on the 11th day of October or not. I never lit any light there that day. I generally didn't carry out the orders of the boss. The boss knew I didn't carry out his orders. Sometimes I performed my duty. * * * He told me to put a board there. On the day of the accident I did not see a cover for the hole."

Other witnesses for defendant testified that a lighted candle was kept at the mouth of the chute, and orders were given to car men and shift bosses to keep the chute covered when not in use.

McCARTY, *District Judge:* After stating the facts delivered the opinion of the court.

It appears from the record that there is a conflict in the testimony on the vital issues of the case. At the conclus-

ion of the testimony for plaintiff, Margaret Linden, wife of decedent, who had testified in her own behalf, was recalled by defendant for further examination, and over the objections of her counsel was compelled to answer the following questions:

"*Q.* Did the Anchor Mining Company send or give you anything in the way of a donation?

"*A.* I do not know whether the Anchor Mining Company gave me anything or not. They took up a collection from the men at the mine. They may have given some to the collection. How much the Anchor Mining Company gave, if they gave anything I don't know. They paid the funeral expenses, I believe, and sent two nurses to take care of him, and that is about all.

"*Q.* And the doctors?

"*A.* And the doctors."

The witness was not asked, nor did she testify on her direct examination, as to anything the defendant had done or failed to do by way of furnishing her assistance. Neither payment, nor a release of any kind was pleaded by respondent. This evidence was, therefore, immaterial and inadmissible for any purpose, and the objection to its introduction should have been sustained. There being a sharp conflict in the testimony on the material issues in the case, this evidence could not have been other than prejudicial to plaintiff. Evidence of respondent's generosity in taking up a collection for the benefit of plaintiff and paying for medical and surgical assistance rendered decedent, would naturally have a tendency to influence the jury to some extent in favor of defendant and to draw their minds away from the main issues in the case. *Snowden* v. *Pleasant Valley Coal Co.*, 16 Utah 336; *Stoll* v. *Mining Co.*, 19 Utah 271; 57 Pac. Rep. 295.

The court instructed the jury that the burden was upon

the plaintiff to prove to their satisfaction by a preponderance of the evidence, "That the decedent, James Linden, was killed by reason and because of the unsafe condition of the drift and chute in question, and without any fault on his part and while he was taking due and proper care for his own safety." Appellant duly excepted to this instruction, the giving of which is now assigned as error. The rule is well settled by abundant authority that in an action for damages for personal injuries or death, the burden of proving contributory negligence is on the defendant, and the plaintiff is not required to prove the absence of contributory negligence on his part. This rule is subject to the exception that where the evidence for plaintiff shows contributory negligence on his part, the defendant is not required to prove it. "Where the facts proved by the plaintiff do not, upon their face show negligence in the plaintiff, the opposing party, if he relies upon the acts of negligence, must show it." *Bowers* v. *U. P. R. R. Co.*, 4 Utah 224; *Smith* v. *Occidental Steamship Co.*, 99 Cal. 462; *Daly* v. *Hinz*, 113 Cal. 336; *Nelson* v. *City of Helena*, 16 Mont. 21; *McDougal* v. *Con. R. R.*, 63 Cal. 431.

In response to this assignment of error respondent calls attention to and relies upon a further instruction given by the court, wherein the court instructed the jury as follows: "Before you can find the decedent guilty of contributory negligence, you must be satisfied by a preponderance of the evidence that he failed to observe that degree of care and caution that an ordinarily prudent person engaged in the same business and under like circumstances would have used."

It will be observed that the two instructions are inconsistent and contradictory upon one of the material issues in the case. In the first instruction the jury were in

effect told that the burden was on the plaintiff to show by
a preponderance of the evidence that the decedent, James
Linden, was not guilty of contributory negligence, and in
the other instruction the jury were told that the burden
was on the defendant to show contributory negligence on
the part of decedent. The first instruction was clearly
erroneous and prejudicial to plaintiff, and while the subse-
quent instruction on the same issue was unduly favorable
to plaintiff, it cannot be held that it rendered the first
harmless or neutralized the effect it might have had on the
minds of the jury. *Monroe* v. *Cooper,* 6 Pac. 378;
*Owning* v. *Bartels,* 3 Pac. 225; *Agnew* v. *Kimball,*
9 Pac. 91; *Hold* v. *Spokane & P. Ry. Co.,* 35 Pac. 39;
*Haight* v. *Vallet,* 26 Pac. 897; *Kelly* v. *Cable Co.,* 14
Pac. 633.

Respondent contends that the evidence as disclosed by
the record fails to show negligence on the part of defend-
ant, but shows negligence on the part of the decedent, and
if any errors existed they were harmless and not pre-
judicial to plaintiff as the facts preclude a recovery.

The defendant was legally bound to provide decedent a
reasonably safe place in which to perform the work re-
quired of him in the employment, and to exercise ordinary
care in rendering and keeping the approaches leading to
and from the place where the work was being performed
in a reasonably safe condition. It must be conceded that
the location of the chute in the middle of the track at a
point where the stope did not exceed five feet in width,
rendered it extremely dangerous for decedent to pass the
chute when it was left uncovered and without a light to
indicate its exact location. It must also be conceded that
the increased danger to the employment because of the
location of the chute could, with comparatively little ex-
pense, have been avoided, by building the chute so that

the opening thereof would have been at one side of the
track and passage way. The defendant having con-
structed the chute so as to make of the situation one of
extraordinary danger, it was its duty to exercise care and
diligence in proportion to the perils and dangers of the
situation by providing and keeping at the mouth of the
chute the necessary and usual safeguards. The rule is,
the greater the danger, the greater the care required.
Bailey Mast. Liab., p. 54; *Handley* v. *Mining Co.*, 15
Utah 176.

When the decedent went to work in the stope in ques-
tion he had a right to presume and act upon the presump-
tion that defendant had performed and would continue to
perform every duty incumbent upon it in this respect.
Sherman and Redfield on Negligence, sec. 185b.

If the defendant failed to use that degree of care and
diligence that prudent and reasonable men skilled in the
particular business would ordinarily use under the same
or similar circumstances, and the accident was the result
of such negligence, then defendant is liable unless the
decedent was also negligent, or the circumstances and
conditions were such as to make of the dangers, assumed
risks.

Decedent was an experienced and skilled miner, and
when he entered the service of defendant he assumed all
the risks and hazards incident to, and that ordinarily
belong to the occupation in which he was engaged.
This assumption of risks and hazards, however, did not
include those that might arise from the negligence of
defendant in failing to use ordinary and reasonable care
to keep the premises in question in a reasonably safe con-
dition.

The court instructed the jury that if they found that the
deceased, James Linden, knew of the existence and loca-

tion of the chute, plaintiff cannot recover. Plaintiff excepted to this instruction and now alleges that the giving of it was error. This instruction was erroneous. It does not necessarily follow that because decedent, a year prior to the accident, constructed the chute in question and knew of its existence and location, he was guilty of negligence, or that he assumed the increased hazards and risks created and caused by the chute being occasionally left uncovered and without a light. These are questions of fact for the jury, the determination of which must necessarily depend upon decedent's knowledge, if any he had, at the time and prior to the time of the accident, of the dangerous condition in which the chute was sometimes left when not in active use, and the degree of care and caution exercised by him at the time the accident occurred. It appears from the testimony of defendant's witnesses that defendant gave orders to the car men and shovelers to keep the chute lighted, and to keep it covered when not in use; and the decedent had nothing whatever to do with the supervision and management of it. It is evident that if these orders had been carried out and the chute kept covered and guarded, the accident would not have happened. And there is some evidence in the record that tends to show that the chute was frequently left uncovered and without a light when not in use, and that defendant must necessarily have known that it was so left, as it was the custom of its foreman to go through and inspect the mine twice each day. The testimony of Patrick Powers, wherein he testifies that he generally failed and neglected to carry out defendant's orders with respect to keeping the chute covered and lighted, and that defendant had knowledge of such failure and neglect, tends to show that this condition of affairs existed. And the evidence is far from conclusive that decedent knew or by the exercise of ordinary care ought to have known that the chute was occa-

sionally left uncovered and without a light, when not in use, or that there was a want of due care on his part in not observing the open chute.

We do not think the facts in this case as shown by the record would warrant this or any court in holding, as a matter of law, that decedent was guilty of contributory negligence, or that he knew or ought to have known, that the chute was frequently left uncovered and without a light when not in use so as to make of the extra dangers and hazards caused thereby assumed risks. In the case of *Railroad* v. *Everett* 14 Sup. Ct. Rep. 474, the court says, "It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because of the facts being undisputed, fair-minded men will honestly draw different conclusions from them." *Railroad Co.* v. *McDade*, 135 U. S. 554; *Railroad Co.* v. *Converse*, 139 U. S. 469; *Railroad Co.* v. *Powers*, 13 Sup. Ct. Rep. 748.

This rule of law has been repeatedly invoked and followed in this state. *Reddon* v. *Railway Co.*, 5 Utah, 44; *Seley* v. *So. Pa. Co.*, 6 Utah, 319; *Anderson* v. *Depot Co.*, 8 Utah, 128; *Woods* v. *Railroad Co.*, 9 Utah, 146; *Smith* v. *Railroad Company*, 9 Utah, 144; *Chapman* v. *So. Pa. Co.*, 12 Utah, 30; *Anderson* v. *Mining Co.*, 15 Utah, 22.

There being a conflict in the evidence on most of the material issues in the case we would not disturb the judgment of the trial court were it not for the errors of law which we have considered. Because of these errors the case must be reversed, and a new trial granted, and it is so ordered. The costs of this appeal to be taxed against the respondent.

BARTCH, C. J. and BASKIN, J., concur.