M. L. GARITY, Respondent, v. THE BULLION-BECK & CHAMPION MINING COMPANY, a Corporation, Appellant.

No. 1524.   (76 Pac. 556.)

1. Master and Servant: Personal Injuries: Safe Place to Work.

It is the duty of the owner of a mine to provide reasonable safe passageways and approaches therein, and to exercise ordinary care in keeping them in a reasonably safe condition.[1]

2. Same: Contributory Negligence.

A miner was not guilty of contributory negligence, as a matter of law, in attempting, while on his way to work, to cross a lagging which had been put in since he last crossed the space which it covered, and which was composed of planks of the same kind usually used in mines for the same purpose.

3. Same: Assumption of Risk.

While a servant assumes the risks ordinarily incident to, and naturally arising out of, the employment, he does not assume unusual and extraordinary risks caused by the master's negligence, unless such risks are open and visible, or the servant has knowledge of them.

(Decided April 23, 1904.)

Appeal from the Fifth District Court, Juab County.— *Hon. T. Marioneaux*, Judge.

---

[1] Linden v. Anchor Min. Co., 20 Utah 134, 58 Pac. 355.

Action to recover for personal injuries alleged to have been sustained by plaintiff because of defendant's failure to furnish a reasonably safe course of ingress and egress to and from his place of work in defendant's mine. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*Messrs. Farnsworth, Lund & Truman* for appellant.

*Messrs. Powers, Straup & Lippman* for respondent.

STATEMENT OF FACTS.

This is an action to recover for personal injuries alleged to have been sustained by plaintiff because of defendant's failure to furnish a reasonably safe course of ingress and egress to and from his place of work in defendant's mine. The facts, in brief, are as follows: The plaintiff was in the employ of the defendant company, and while going to his work on the night of June 24, 1902, received the injuries complained of. At the time he was injured, and for a week prior thereto, he was at work on the 750-foot level of the mine. In going to his work, he was lowered from the surface to the 700-foot level in a cage. On leaving the cage, he passed through a drift or tunnel 150 feet, and then down a manway, by means of a ladder, to within 14 feet of the 750-foot level, at which point he left the manway and walked along on the caps of the square sets of timbers for about 24 feet to the solid rock on the opposite side of the stope from the manway, and from there he would continue his course about 40 feet to his place of work. He was working on night shift, and went to work at 6 o'clock in the evening. Between the time he went off shift on the morning of June 24, 1902, and the time he returned to work in the evening of said day, one of the

sets of timbers (square sets) on the opposite side of the stope from the manway was covered with lagging by one Mike Mernan, under the direction of the shift boss of the mine. The lagging consisted of planks which were 10 or 12 inches wide and 2 inches thick. This lagging covered the entire square or space within the square set, and was placed there for the purpose of enabling miners to take down the ore on that side of the stope, and for plaintiff and other miners to pass over when going to and returning from their work in that part of the mine. On the night of the accident, plaintiff walked along on the caps of the timbers, as he had previously done while going to and from his work, and, on coming to the square sets referred to, started to cross over on the lagging, which was so laid as to give it the appearance of a floor; and, when about midway of the space covered, one of the planks broke and gave way under him, and he was precipitated to the landing below, a distance of about 14 feet, and thereby sustained the injuries for which this action is brought. The route taken by plaintiff on the evening of the accident was the most convenient, open, and direct of any in the mine by which he could go to and from his work, and was the one he had always taken before and up to the time of the accident, and was also the same route he had seen the shift boss take in going to and from this same place. In .fact, the record shows that it was the only practicable route plaintiff could have taken. Soon after the accident the plank that broke and caused plaintiff to fall was examined, and found to be rotten and unfit for the use made of it. At the conclusion of plaintiff's testimony, defendant moved for a nonsuit on the following grounds: First, that plaintiff was guilty of contributory negligence by stepping upon the plank without first inspecting and testing it; and, second, that the risks and hazards incident in going to and from his work, including the risk of passing over the plank referred to, were assumed risks. The motion was overruled by the court. The defendant declined to intro-

duce any testimony, and the issues were submitted to a jury, who returned a verdict for plaintiff in the sum of $1,695. Judgment was duly entered on the verdict in favor of plaintiff for said sum, and for $65.80, costs of suit, and from this judgment defendant appealed.

McCARTY, J., after stating the facts, delivered the opinion of the court.

The nonsuit was properly overruled. It was the duty of defendant to provide reasonably safe passageways and approaches in its mine to and from the place where plaintiff was at work, and to exercise ordinary care in keeping them in a reasonably safe condition. Linden v. Anchor Min. Co., 20 Utah 134, 58 Pac. 355; Buzzell v. Mfg. Co., 48 Maine 113, 77 Am. Dec. 212; 1 Shearman & Redfield on Negligence, 194.

It appears from the record that the lagging which gave way and caused the injury to plaintiff covered a space of six feet only, and was composed of planks of the width and thickness used in mines generally for like purposes. Plaintiff had a right to presume, and to act upon the presumption, that the defendant had used ordinary care in the selection of the timber to make this platform or floor, and that it was safe and suitable for the purposes for which it was constructed. And it can not be held, as a matter of law, that when he came to this floor, on the night in question, with only his candle to light his course, he was guilty of negligence in walking, or, rather, in attempting to walk, across it; this being one of the purposes for which it was intended.

While it is a well-established rule of law that the servant assumes the risks, dangers, and hazards that are ordinarily incident to, and naturally arise out of, the employment in which he is engaged, yet he does not assume the unusual and extraordinary risks caused by the master's negligence in failing to perform some duty imposed upon him by law, which he owes to the servant, unless the risks and dangers cre-

ated by such negligence are open and visible, or the servant has knowledge of them. Bailey, Master's Liability to Servant, 151-155. In this case the shift boss, under whose direction the plank was placed across the timbers referred to, had every opportunity to inspect and observe the defective condition of the plank. He and the men under him had the handling and moving of it to the place where it was used, and therefore had a much better opportunity to discover its defective condition than the plaintiff; and there is not a scintilla of evidence that even suggests that the defective condition of the plank was known to plaintiff, or that it was so open and visible that he knew, or by the exercise of ordinary care would have known, of it.

The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.