[No. 6472.]

## JACKSON V. THE YAK MINING, MILLING & TUNNEL CO.

1. MASTER AND SERVANT—*Duty of Master as to Place of Work*—One operating a lode mine must use reasonable care to see that the lagging upon which the miner may be required to walk, in going about the mine, is in safe condition. He is liable in damages for injuries to an employe occasioned by any defect in the material or construction thereof which might have been avoided by the exercise of ordinary care. The facts examined and the case held not to be within the exception which controls where the servant is employed to make a dangerous place safe—(557, 558).

2.        ——*Vice Principal*—Knowledge on the part of the agent who timbers the mine, is the knowledge of the mine owner. If defective or unsuitable timber is used, and by reason of this defect an injury afterwards occurs to a miner, the master is not exonerated by the claim that at the time of the injury he had no knowledge of the condition of the structure—(557, 558).

3.        ——*Non-Delegable Duties of Master*—The obligation of the master to use reasonable care in respect of the appliances furnished for the use of the servant cannot be delegated, so as to absolve the master from responsibility for negligence in this regard—(561).

4.        ——*Servant's Assumption of Risk*—The servant does not assume extraordinary risks occasioned by the master's negligence, unless the danger is an open and visible one, or the servant has knowledge of it—(561).

5. ·        ——*Contributory Negligence of Servant*—A timber man employed in a lode mine, having occasion in the discharge of his duties to walk upon the lagging of a drift is entitled to assume that it was constructed of proper material and in a proper manner—(559).

At the most, he is not required to do more than to examine the surface, restore any of the sticks which may be out of place and use reasonable care in making the passage—(560).

6.   NEGLIGENCE—*For the Jury*—Only when the facts are undisputed, and reasonable men can fairly draw but one conclusion is the question of negligence one of law for the court. The facts examined and the case held within the general rule—(558).

*Error to Lake District Court*—Hon. CHARLES CAVENDER, Judge.

Mr. J. J. MCFEELEY and Messrs. DIXON & DIXON for plaintiff in error.

Mr. WILLIAM E. HUTTON, Mr. JOHN A. EWING and Mr. B. B. MCCAY for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

Action for damages upon account of personal injuries. At the close of plaintiff's case the defendant

upon motion was granted a non-suit; the plaintiff brings the case here for review upon error.

The rule of law relied upon to reverse the judgment is the rule which requires the master to furnish for his servant a reasonably safe place in which to work. The main contention is in the application of the rule to the facts, rather than over the rule itself.

For about two years prior to the accident the plaintiff had been in the employ of the defendant company as a laborer, engaged in mucking, shoveling and helping on machines. About two weeks prior to the accident he was changed to what is known as a timberman, and as such was engaged in the defendant's mine in what is called stope No. 11, drift "K". This drift was timbered with what are known in mining parlance as "square sets". These are frames so constructed and so arranged with reference to each other so that the tops can be and are covered with what are known as cribsticks or lagging. The square sets follow each other, so the cribsticks thereon form a continuous floor or gangway to be used by the employees in going to and from their work. These cribsticks appear to have been about five feet in length, about two inches in thickness, of various widths, mostly unedged. They rested upon timbers called caps, which were about seven feet in length, about twelve inches in depth and ten inches in width. The plan of this structure was for the cribsticks at the ends to be butted up against each other, not lapped. This gave each cribstick or board a bearing at the ends of five inches with which to lay upon the tops of the caps, which were ten inches in width. The cribstick boards were not nailed down; it was necessary at times to remove them in order to allow the ore, dirt, rock and rubbish to drop through, and then replace them. They were intended to be secured by wedges driven between the edges of the outside crib-

sticks and the posts at the corners of the square set. These wedges could not be driven tightly because the cribsticks being unedged, such driving would cause them to 'buckle up' as it is termed. The heighth of each square set appears to have been about seven feet. In the operation of this mine it appears that when a drift was stoped out so as to render it necessary, a second set of square sets was constructed upon the first and a third on the second, etc. In the drift involved three sets or tiers of square sets had been erected all along prior to the accident so that the top floor or gangway was twenty-one feet from the ground. The evidence does not disclose how long this timbering had been done by the defendant company before plaintiff was employed as timberman and set to work in this drift, but it does disclose that it had been there for some time prior to his employment as timberman, and that the plaintiff had nothing to do with its construction. It was likewise erected as and for a permanent structure; that is so far as such structures are permanent consistent with the operation of a mine. It was constructed as a permanent structure for the purposes intended so long as such a structure was needed there for that purpose, evidently depending upon the length of time the mine would be operated, at least in that drift.

The plaintiff testified that at about 7 o'clock in the morning on the day of the accident he was working in stope 11; that in order to get to it he had to go through a drift and walk on the flooring made of cribsticks on top of the square sets (crossing over four or five of such sets), then turned and went to the stope where the men were working, which was four or five feet from the timbers where the accident occurred; that when he turned to go back he looked at the floor, and it looked all right; that he had a candle in his right hand and an ax in the left; that when

he stepped upon some of the cribsticks in a certain section the cribbing slipped beneath him and went down; that he endeavored to save himself by seizing other cribsticks, but they fell with him and he was precipitated a distance of twenty-one feet, sustaining injuries of a very serious and permanent character. The plaintiff testified, that after the accident he learned for the first time (and other evidence also discloses) that one of the caps on the square set through which he had fallen was defective. From its description the inference is that it was sawed from a log insufficient in size to furnish a cap with the same dimensions throughout, but for a distance of two feet or more from one end it was smaller in size and was not of the heighth of twelve inches or the width of ten, but smaller than this dimension and was rounding instead of square on the side in and towards the square set in which the plaintiff fell, and in which place it appears that the cribsticks on which he had attempted to walk slipped therefrom. The plaintiff testified, that when he came to the cribsticks on the square set through which he fell, he examined the floor carefully, as he did all others; that the set was entirely covered with cribsticks and that they were in proper position, the ends coming to the center of the caps; that he could tell this by their position relative to the posts; that his principal duty was that of doing timber work where the men were working in the stope, although he also testified that if he found a cribstick board broken it would probably have been his duty to have replaced it.

The shift-boss testified that neither the timberman nor the miners had anything to do with laying the flooring upon the caps except upon his order. Mr. Hoagland, a witness for the plaintiff, testified that he was employed by the defendant as an all around man; that three days before the accident the shift-

boss ordered him to go to the particular square set in question to clean the dirt off of the floor; that on taking up the cribsticks he discovered the defective cap as above described; that after cleaning off the dirt he replaced the cribsticks as he found them, except that at one point they would not lie level because a knot had not been trimmed close enough; that he procured an ax and trimmed the knot off; that he replaced the cribsticks carefully, as he found them, side by side, and wedged them in the usual manner; that when the cribsticks were down one could not see the condition of the cap underneath; that owing to the condition of the cap they should have been fastened.

Under this state of facts the plaintiff's contention is that the accident was caused on account of the cribsticks slipping from the end of the cap, which was round on that side, and which was an unsuitable, unsafe and unfit timber for that purpose, viz., for the purposes intended, in the manner intended; that the defendant was negligent in the use of this timber in the building of the square set.

The defendant presents four theories upon which it contends that the findings of the trial court can be sustained. First, that the evidence fails to show that the defendant was guilty of negligence as charged. Second, that the evidence fails to show that the act of the defendant in the original use of the cap of which plaintiff complains, was the proximate cause of the injury. Third, if otherwise, that plaintiff, having engaged himself to the defendant as a timberman, was charged with the responsibility for the condition of the timbers and cribsticks, the proper placement and wedging of the sticks, the duty of inspecting it all, and ascertaining whether it was or was not in a safe condition; that if there was negligence in failing to discover a dangerous condition of the place

where he was injured, that negligence must be attributed to him.    Fourth, that the plaintiff assumed the risk.

We cannot agree with either of these positions. Such structures used in mining operations come within the safe place rule, unless for some other reason which makes an exception.    The rule is that a mine owner is liable in damages for injuries to his employees occasioned by any defect in the material or insufficiency in the construction of such a structure which could have been avoided by the exercise of ordinary care.— *Grant v. Varney,* 21 Colo., 329; *Cripple Creek Mining Co. v. Brabant,* 37 Colo., 423; *Garity v. Mining Co.,* 27 Utah, 534; *Western C. & M. Co. v. Ingraham,* 70 Fed., 219; *Westland v. Gold Coin Mines Co.,* 101 Fed., 59; *Kelley v. Fourth of July Mining Co.,* 16 Mont., 484; *Hanley v. California etc. Co.,* 127 Calif., 232.

In *Grant v. Varney, supra,* this court held that it was the duty of the master to furnish and maintain a reasonably safe place for the servant to work in; that if he delegates the performance of this duty to an agent who is negligent in furnishing or maintaining such a safe place and if in working therein and without fault on his part an injury occurs to another employee, such negligence is the negligence of the master.

In *D. & R. G. R. R. Co. v. Sipes,* 26 Colo., 17, we held, that it was the duty of the employer to make reasonable efforts to keep machinery and appliances used by its employees in suitable condition for use; that this duty cannot be delegated so as to exonerate the employer from liability to an employee injured by the negligence of a co-employee charged with the performance of such duty in failing to do so, but that the employee charged with such duty is a representative of the employer in the performance thereof and not a fellow-servant; that his negligence therein is the

negligence of the employer and if the negligence of the master in this respect is the proximate cause of an injury, he is not relieved from responsibility because the negligence of a co-employee contributes to the injury.

In Vol. 26, page 1144 Cyc., it is said:

"Where the defect in an appliance is shown to be structural and is of such a character as renders it unsafe it may be inferred that the employer was aware of the defect and an employee who has been injured by such an appliance need not show that the master knew that it was defective. * * * *"

Cases from Arkansas, Illinois, Indiana, Kansas, Massachusetts, Michigan, Pennsylvania, the Federal courts and England are cited in support of this statement.

Applying these principles to the case at bar, in the original construction of this frame work, the knowledge of the then agent of the master that this cap was not suitable was the knowledge of the master, and if there was negligence in the original construction, and upon account of this negligence the injury occurred, the master cannot escape liability by claiming that at the time of the injury he had no knowledge of the condition of this structure. The fault, if any in this case, as shown by the evidence, was in the use of the material supplied in the first instance. The question of whether the master was negligent in this respect was for the jury to determine. It is only when the facts are undisputed and are such that reasonable men can fairly draw but one conclusion, that the question of negligence is ever considered one of law for the court.—*Hines Lumber Co. v. Ligas,* 172 Ill., 315.

We do not think this case, as it comes to us, is one where all reasonable men must draw the inference that the plaintiff was guilty of, or the defendant free from, negligence. These were questions of fact on

which there was evidence which should have gone to the jury.

The contention of counsel that the cribsticks that fell with the plaintiff evidently had been displaced since the preceding day, for the reason that they did not fall with him on the day before and appeared then to be all right; and for the further reason that they had been firmly tapped down and wedged by Hoagland three or four days before the accident and for these reasons the defective timber could not have been the proximate cause of the injury, are but arguments only to sustain their theory of the evidence. On the other hand, there is no evidence showing that the plaintiff stepped upon the same cribsticks upon the preceding day, or that the wedges would have held them at any time when the weight was placed directly upon those at the place where the timber was round and not flat, as the evidence shows it should have been in the manner used. The evidence, as it stands, tends to show that it was not upon account of the fact that there had been recent displacement of the cribsticks and loosening or displacement of the wedges that caused this injury, but that it was upon account of the condition of the cap itself. According to the testimony of the plaintiff's witnesses, the cap was unsuitable for the purposes intended, and this is not in any way mitigated against, because there is evidence to the effect that the cribsticks on the adjoining set nearer the breast where the shooting was done were pushed over farther than they should have been.

The testimony of the plaintiff is to the effect that he examined the cribsticks upon this square before stepping upon it, and that they all appeared to be in their proper position. It was not his duty, and he never was instructed, to investigate the timbers underneath, or any of them for the purposes of ascertaining if there had been any unsuitable or defective

timbers used in the original construction. He had a right to assume that in the original construction of this frame work the master had caused it to be supplied with proper timbers placed there in a proper manner, and his duties, at most, were to examine the surface to ascertain if the cribsticks were in proper place, and if not to so place them for the purpose of making the surface reasonably safe for him and the other employees to walk over, and likewise to use reasonable diligence in going over it.

In the case of *Westland v. Gold Coin Mines Company,* 101 Fed., page 59, it was held, that a mining company is bound to exercise reasonable care in the erection of such structures to see that the timbers are of adequate strength and number and securely fastened to render it a safe place in which to work. To the same effect is the case of *Western C. & M. Co. v. Ingraham,* 70 Fed., 219, and many other cases there cited in support of this position.

In the case of *Hanley v. California etc. Co.,* 127 Calif., 232, it was held, that where a permanent tunnel is driven into a mountain to open up veins of mineral that as fast as it is completed the finished tunnel becomes an appliance or means furnished by the master through which the remaining work is to be prosecuted; that the laborer employed upon the unfinished portion of such a tunnel does not take a fellow-servant's risk in passing through the finished portion to get to his place of employment; that this rule would not be different where he himself helped to complete the finished portion. The same principle is involved in *Union Pacific Ry. Co. v. Jarvi,* 53 Fed., 65, and *Kelley v. Fourth of July Mining Co.,* 16 Mont., 484, and we think is applicable here.

It is true the plaintiff might, by a minute inspection of the entire structure, have ascertained that the dimension timber upon which the boards rested

was round at the one end and for that reason unsafe for the purposes intended, in the manner planned, viz., to place the plank thereon butted up against the ends of each other and not lapped, but there is no evidence which goes to show that under the circumstances it was his duty to do so, or that a failure so to do was neglect to exercise ordinary care. An employee has a right to act upon the theory that his employer has used reasonable diligence to provide reasonably safe appliances and himself exercising ordinary care; if his attention has not been called to a defect or danger and the same is not obvious, he is not chargeable with notice of a defect which could only be discovered by a careful inspection.—Wood on Master and Servant, section 332-385; *Rice & Bullen Malting Co. v. Paulsen,* 51 Ill. App., 123.

The obligation to use reasonable care in furnishing appliances for the use of employes is one that cannot be delegated so as to absolve the master from responsibility for negligence in this regard, and if such care is not used and the servant is injured because of insufficient, unreasonable and insecure appliances, he, having no notice of the defective condition, may recover.—*D. & R. G. R. R. Co. v. Sipes,* 26 Colo. 17; *Pullman's Palace Car Co. v. Laack,* 41 Ill. App. 34; *Tudor Iron Works v. Weber,* 31 Ill. App. 306.

Further, upon the question of the assumption of the risk because the plaintiff was a timberman, and thereby, as counsel contend, assumes the risk ordinarily incident to and naturally arising out of the employment, the authorities are to the effect that he does not assume unusual and extraordinary risk caused by the master's negligence unless such risks are open visibly or the servant has knowledge of them.—*Garity v. Mining Co.,* 27 Utah 534.

In the case of *Pantzar v. Tilly Foster Iron Mining Co.,* 99 N. Y. App. 368, it is said:

"The rule that the servant takes the risk of the service pre-supposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. * * * It is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes."

In the same case it was further said:

"That no duty belonging to the master to perform, for the safety and protection of his servants can be delegated to any servant of any grade so as to exonerate the master from responsibility to a servant who has been injured by its non-performance."

In the case at bar the original construction is chargeable to the master; he is held to the duty of having exercised ordinary care for the safety of his employees, both in construction and in the material selected therefor and in its being suitable for the purpose intended. There is evidence that he did not do so. This was a question for the jury to determine.

When constructing it, the then employees of the company had every opportunity to inspect and observe the defective condition of the caps. They had the handling and examination of this timber when it was being placed where it was used and therefore had every opportunity to discover its defective condition for the purposes intended, if such existed, and there is not a scintilla of evidence that even suggests that the defective condition of this timber was known to the plaintiff. It was not open or visible and we cannot say, as a matter of law, by the exercise of ordinary care that he would have known of it. It was the cause of the injury, as testified to by the plaintiff and his witnesses.

The exception to the safe place rule that it does not apply where the work being done by the employee in the making or repairing of the place, as in substance

held by this court in the cases of *City of Greeley v. Foster*, 32 Colo. 292; *Poorman Silver Mines v. Devling*, 34 Colo. 37; *Maloney v. F. & C. C. R. R. Co.*, 39 Colo. 384, has no application to this case.

The plaintiff had nothing to do with the construction of this timbering, his duties, as shown by the evidence, were in doing timbering where the miners were at work and in case he found a board or cribstick misplaced elsewhere or broken upon top of the timbering in the drift theretofore constructed by others, it was his duty, presumably, to fix it; but all the testimony introduced, including that of the shift-boss, goes to establish that it was never intended that the plaintiff make an inspection of this framework under the cribsticks. All appear to have assumed, as they had a right to, that that was constructed suitably and sufficiently safe for the purposes intended, and that the timbers used therein were of sufficient size, strength and shape to make them reasonably safe for the purposes and in the manner in which they were used. The plaintiff had a right to presume that the company, through its former agents and employees, performed all these duties. At the time of the accident he was not engaged in inspecting or repairing these timbers, but did examine the cribsticks before he stepped on them, and, according to his testimony, they were all in proper condition and would have been perfectly safe had it not been for the defective cap underneath.

The judgment is reversed and the cause remanded for a new trial in harmony with the views herein expressed.                                         *Reversed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE WHITE concur.