## SOUTHERN PACIFIC CO. v. UNITED STATES.

### No. 10399.

United States Court of Appeals
Third Circuit.

Argued Oct. 18, 1951.

Filed Nov. 19, 1951.

Armistead B. Rood, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., William Marvel, U. S. Atty., Francis A. Reardon, Asst. U. S. Atty., Wilmington, Del., Edward H. Hickey, Washington, D. C., on the brief), for appellant.

Robert J. McLean, New York City (Southerland Berl & Potter, Wilmington, Del., Jeremiah C. Waterman, New York City, on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This litigation represents an attempt on the part of the Southern Pacific Railroad to collect some unpaid freight charges from the United States. Suit is brought under the Tucker Act.[1] Plaintiff won in the District Court and the government here seeks to persuade us that the decision is wrong. There is no controversy as to what happened. The disagreement comes as to the legal consequences of the stipulated facts.

In 1946 Army authorities declared obsolete a group of truck trailers known as "Athey-Wagons" which were located at the Army's Mount Rainier Ordnance Depot. These were then sold by agents of the War Assets Administration to Kritzer Equipment Company of Oakland, California. The terms of this sale were "f.o.b., cars, common carrier, Mobase, Washington," and provided for shipping expenses to be paid by the buyer who was to furnish specific shipping instructions. It was stipulated that title to the trailers passed to the buyer at the time the sales contract was completed.

The buyer then notified the War Assets Administration to ship the trailers to him at Oakland by railroad freight. They were loaded aboard freight cars and delivered to the Northern Pacific Railroad (original carrier) at Mobase. This delivery was in charge of Lt. Robert W. Wilson, Army Transportation Officer at Mobase, to whom War Assets Administration had forwarded the buyer's shipping instructions.

Lt. Wilson executed a bill of lading known as Uniform Domestic Straight Bill of Lading with the Northern Pacific Railroad, signing it as "Lt. Wilson, T. O." He did not use a government bill of lading. Nothing was said on the bill of lading to the effect that the government disclaimed any liability for the freight charges.

At destination the buyer refused to pay the freight charges because of a dispute concerning the applicable rate. The trailers were then sold by the Southern Pacific Railroad (delivering carrier) pursuant to terms of the bill of lading. The difference between the freight earned and the proceeds of the sale is the claim in this suit and for which the carrier recovered in the District Court.

■ The government's position is that Lt. Wilson had no authority to bind the War Assets Administration by use of the commercial bill of lading which did not disclaim government responsibility for freight. We need not consider the question of apparent authority or authority by estoppel[2] in this case because the Tucker Act has been interpreted to cover only contracts implied in fact and not those implied in law.[3] We assume that a contract based on apparent authority is one "implied in law."

■ Our view is that Lt. Wilson's authority to make this particular contract may be properly described as "incidental authority." This is defined in the Restatement of Agency § 51 in the following language:

"Unless otherwise agreed, authority to make a specified contract includes authority:

"(a) to make it in a usual form and with usual terms or, if there are no usual forms or terms, in an appropriate way; and

"(b) to do other acts incidental to its making which are usually done or which, if not usually done, are reasonably necessary for making it."

Apparently, War Assets had no representative at the somewhat isolated depot where these trailers were loaded so that it became necessary for Army transportation officers to prepare bills of lading and arrange shipments for War Assets. Army regulations provided that at such installations as this transportation officers "will prepare and sign commercial bills of lading or other shipping documents on written delegation of authority from the disposal agency." (War Dept. Commercial Traffic Bulletin No. 27)

1. 28 U.S.C. § 1346(a) (2) (1951 Supp.).

2. Restatement of Agency § 27.

3. See Goodyear Tire & Rubber Co. v. United States, 1928, 276 U.S. 287, 293, 48 S.Ct. 306, 72 L.Ed. 575; United States v. Minn. Investment Co., 1926, 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911.

Did Lt. Wilson get a "written delegation from the disposal agency" so as to come within this directive? The record before us shows that War Assets forwarded to Lt. Wilson the shipping instructions it had received from the buyer. These consisted of a printed form containing appropriate blanks to be checked in order to indicate by what form of transportation the goods were to be shipped. The buyer had filled in the form with the words, "By R. R. Freight."

Since this terse instruction was sent to Lt. Wilson by War Assets Administration officers, they quite obviously instructed the lieutenant to ship by railroad freight without furnishing him any more specific instructions. Since he was not told what type bill of lading to use, the directions given him carried with them authorization to use any customary or reasonable form of shipping document. A standard straight bill of lading is the commonest type of shipping document.

Moreover, if there had been two railroads at Mobase, Lt. Wilson would presumably have had authority to select either one of the two. Similarly, we conclude he had authority to select a reasonable type bill of lading.[4]

■ The record does not reveal that War Assets limited Lt. Wilson's authority to any particular type of shipping contract. In the absence of such limitation, his authority to contract includes any reasonable manner of carrying out the orders he did receive, namely, to ship the goods to Kritzer by railroad freight. This is authority implied in fact and not authority implied in law.

One further problem arises from the fact that Lt. Wilson did not name the United States as principal on the bill of lading. In the blank space provided for designating the shipper we find only the words "1st Lt. Robert W. Wilson, T.O."

■■ Lt. Wilson was clearly acting in his representative capacity as a transportation officer for the United States. In view of the fact that this property was being shipped from a United States military depot, that it was military type property and was shipped by an Army Transportation Officer, the only reasonable conclusion is that both the lieutenant and the carrier understood the shipper to be the United States. The rule applicable is stated in the Restatement of Agency § 149 as follows:

"A disclosed or partially disclosed principal is subject to liability upon an authorized contract in writing, if not negotiable or sealed, although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties."

The judgment of the District Court will be affirmed.

---

4. See California Powder Works v. Atlantic & P. R. Co., 1896, 113 Cal. 329, 45 P. 691, 36 L.R.A. 648.