[No. 3805.]

## The Denver & Rio Grande Railroad Co. v. Sipes.

1. NEGLIGENCE—PROXIMATE CAUSE.

When the facts are undisputed and are susceptible of but one inference, the question whether a certain act is the proximate cause of an injury, is one of law for the court; but ordinarily the question of what was the proximate cause of an accident is a question of fact to be determined by the jury, from the evidence, under appropriate instructions by the court.

2. MASTER AND SERVANT—SAFE APPLIANCES—FELLOW-SERVANTS.

It is the duty of the employer to make reasonable efforts to keep machinery and appliances used by his employees in suitable condition for use, and this duty cannot be delegated so as to exonerate the employer from liability to an employee injured by the negligence of a coemployee, charged with the performance of such duty, in failing to do so. An employee charged with such duty is a representative of the employer in the performance thereof and not a fellow-servant with other employees, and his negligence therein is the negligence of the employer, irrespective of the grade of the employee.

3. NEGLIGENCE—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE OF FELLOW-SERVANT.

If the negligence of the master is the proximate cause of an injury to an employee, he is not relieved from responsibility because the negligence of a coemployee contributed to the injury.

4. RAILROADS—NEGLIGENCE- -FAILURE TO PROVIDE PROPER SIGNALS.

The rules of a railroad company required trains running at night to display the headlight in front and two or more red lights in the rear, and when sidetracked to allow another train to pass required the red lights to be removed or turned and green displayed toward the expected train when the track was clear. It was the custom of the company to display a red light in the cupola of the caboose of freight trains for which purpose a special kind of lamp was used, and this light was removed when the train was sidetracked, as soon as the switch was closed. A train was sent out unprovided with a cupola lamp for the reason that the lamp used for that purpose had been left at the shops for repair and none was supplied in its place. The train was sidetracked to let a passenger train, meeting it, pass, and the conductor and rear brakeman whose duty it was to close the switch when the train was on the sidetrack, were asleep and failed to close the switch. The engineer, supposing the switch had been closed, covered the headlight of his engine, which was a signal to the approaching train that the track was clear. The locomo-

tive of the passenger train ran into the open switch, was derailed, and killed the fireman. If the cupola had been provided with a red light it would not have been removed till the switch was closed, and the approaching trainmen would have seen it and stopped the train and avoided the injury. *Held* that the failure to provide the light for the cupola was the proximate cause of the injury and that the company was liable notwithstanding the negligence of the fellow-servants of deceased in failing to close the switch contributed to the injury, and that the light was an appliance which the company was bound to furnish, and the failure of the employees to see that the train was supplied with a suitable light was negligence of the company and not that of fellow-servants.

5. SAME.

Where a railroad company failed to provide a suitable red light for the cupola of the caboose of its freight train, it cannot be relieved from liability for an injury caused by the absence of such light, by the fact that there was a red lantern on the train that might have been fastened to the outside of the cupola, where there was no rule requiring the employees to do so in the absence of the regular cupola lamp.

6. PRACTICE—INTERROGATORIES TO JURIES.

Special interrogatories propounded to a jury are not objectionable because put in such form as would be leading if propounded to a witness.

*Appeal from the District Court of Arapahoe County.*

THIS action was commenced by appellee, as plaintiff in the court below, to recover damages resulting from the death of her husband, who was killed at night-time, by the derailing of an engine, upon which he was employed by appellant, in the capacity of fireman, and is the second time it has been before this court for review. At the point where the accident occurred, appellant maintains a sidetrack for the purpose of allowing trains to pass, and a freight, coming north, took this sidetrack, and in order to enable it to do so, the forward brakeman opened the switch at its south end, leaving it to be closed by the rear brakeman, whose duty it was to do so, but he, as well as the conductor, being asleep, it was left open. The object of the freight in taking the sidetrack was to allow a passenger train, going south, to pass on the main one. The engine upon which deceased was employed was pulling this

passenger train, and reached this point shortly after the freight
had been sidetracked. The fireman on the engine of the latter
train had drawn a curtain over the headlight of his engine,
to indicate to the engineer of the passenger train that the
switch to the sidetrack was closed, and the main track clear.
The rules of the company provide that the conductors of
trains are responsible for the proper adjustment of switches
used by them, and their trainmen, except where switch ten-
ders are stationed; and the engine of the passenger train
having been derailed by the open switch, which it was the
duty of the conductor of the freight to have seen was pro-
perly adjusted, the case, on the first trial, was submitted to
the jury upon the theory that his negligence with regard to
this switch, was that of the company, but on appeal it was
held by this court that such negligence was that of coservants
of deceased, and reversed the judgment, and remanded the
cause for a new trial. *D. & R. G. R. R. Co. v. Sipes*, 23
Colo. 226.

On the second trial the facts with reference to the matters
above mentioned are the same; but another feature regard-
ing the negligence of the railroad company, not passed upon
in the former opinion, for reasons therein stated, we are now
called upon to determine from the following record of the
last trial. It appears from the evidence that it was the cus-
tom of the company to carry a red light in the cupola of the
caboose of its freight trains, which was taken down when the
train carrying it entered on a sidetrack; that a light so car-
ried displayed its rays in all directions, and is the only red
light which can be seen from the front; that the cabooses
were built specially for such a light, with a receptacle enclosed
by red glass, in which a lamp was inserted and clasped; that
no such light was being carried on this freight the night in
question, for the reason that the lamp specially constructed
for this purpose was out of repair, and had been taken by the
rear brakeman, by direction of the conductor of the freight, to
the shops of the company to be repaired; that such light, had
there been one, could have been seen by the engineer of the

passenger train, and that this was the third trip made by the crew of this freight without it; that there were no other lamps in the caboose which could be used in the place in the cupola provided for such light; that two lights are carried on the rear of cabooses, so arranged as to display red to the rear, white at right angles, and green to the front; and that such lights were so carried by the freight the night of the accident. The rules of the company, regarding signals by means of lights, so far as material, are as follows:

" 25. Red signifies danger, and is a signal to stop."

" 34. Each train running after sunset or when obscured by fog or other cause, must display the headlight in front, and two or more red lights in the rear. * * *

"74. When a train turns out to allow another train to pass, the red lights must be removed or turned, and green displayed toward the expected train as soon as the track is clear; * * *

" Headlights on engines when on sidetracks or at the end of double tracks, waiting for trains, must be covered as soon as the track is clear and the train is stopped. * * *

" 78. All signals must be used strictly in accordance with the rules, and trainmen and enginemen must keep a constant lookout for them."

" 94. All trains must approach * * * junction points * * * under perfect control, and will come to a full stop, unless switches or signals are seen to be right, or the track is plainly seen to be clear."

" 121. In all cases of doubt or uncertainty, take the safe course, and run no risks."

In regard to the duties of employees whose employment requires them to give signals, the rules provide:

" 23. Conductors * * * , brakemen * * * , and all other employees whose duty may require them to give signals, must provide themselves with the proper appliances, and keep them in good order, and always ready for immediate use."

The freight train consisted of twenty-four or twenty-five cars, each about thirty feet in length. The passenger train

passed the engine of the freight at the rate of fifteen or twenty miles an hour, and was under control. The fireman who drew the curtain over the headlight of his engine knew that no red light was displayed in the cupola of the caboose attached to his train that night, nor did he receive any signal from which he could infer that the switch had been set to the main track. It appears from the evidence that the word "meet" is used in train service when trains coming from opposite directions meet and pass; and that the word "pass" is used where a train is overtaken from the rear by another, and the former turns out to allow the latter to go by. The cause was submitted to the jury upon the theory that, although the employees of the freight were negligent, nevertheless, if it appeared from the evidence that the company was guilty of negligence in failing to furnish the lamp for the cupola light, and such negligence was the proximate cause of the accident, the plaintiff was entitled to recover. At the request of counsel for plaintiff, the court submitted interrogatories to the jury, which were in substance:

1. Does the evidence establish that the company negligently failed to provide the cupola light for the caboose, and that such failure directly caused the accident by which Sipes lost his life?

2. Was the company, independent of its employees on the freight train, guilty of negligence, which directly contributed to his death?

3. Had the company provided the cupola light, would it not absolutely have prevented the accident?

Instructions requested by counsel for defendant, and refused, were based upon the proposition that the proximate cause of the accident was the negligence of the employees of the freight train, and, if given, would, in effect, have directed the jury to return a verdict in its favor. Other instructions requested by counsel, and refused, were to the effect, that whether the failure to provide a cupola light was the proximate cause of the accident or not, depended upon whether any new cause intervened between such failure and

the accident, sufficient of itself to cause it; and if such cause did so intervene, then the failure to provide the cupola light must be considered as too remote, and not the proximate cause of the accident, even though the cupola light might have prevented it; that, if there were other lights in the caboose which might have been used in place of the cupola lamp, while it was being repaired, the defendant is not liable; and although the lack of such light was the cause of the accident, defendant would not be responsible, unless the employees who left the regular lamp to be repaired, asked the proper officer of the company for another to take its place, and failed to obtain one.

Verdict and judgment for $4,500, from which the defendant appeals.

Messrs. WOLCOTT & VAILE and Mr. HENRY F. MAY, for appellant.

Mr. THOMAS B. STUART and Mr. CHARLES A. MURRAY, for appellee.

MR. JUSTICE GABBERT delivered the opinion of the court.

Counsel for appellant assign as error the giving and refusal of instructions; admitting evidence regarding the custom of carrying a red light in the cupola; submitting the special interrogatories, because leading and not based upon the evidence.

The propositions raised by appellant on the errors assigned, except that relating to the leading character of the special interrogatories submitted, are dependent for solution upon what the evidence tends to establish, or does establish, on these questions: First, what was the proximate cause of the accident? Second, was this cause the negligence of appellant? There is also presented these legal propositions: Did the negligence of the employees of the freight train, in leaving the switch open, and giving the affirmative signal that

the track was clear, relieve appellant from responsibility for its negligence, if negligence upon its part was established? And, should the cause, under the evidence, have been submitted to the jury? But before proceeding with a discussion of the evidence bearing on the vital questions in the case, the rules of law by which these questions, and their materiality, must be determined, will first be stated. When the facts are undisputed and are susceptible of but one inference, the question whether a certain act is the proximate cause of an injury, is one of law for the court (*Henry v. St. L., K. C. & N. R. Co.*, 76 Mo. 288; *Pike v. G. T. R. Co.*, 39 Fed. Rep. 255), but ordinarily the question of what was the proximate cause of an accident is a question of fact to be determined by the jury, from the evidence, under appropriate instructions by the court. *D., T. & G. R. R. Co. v. Robbins*, 2 Colo. App. 313; *Mil. & St. P. R. Co. v. Kellogg*, 94 U. S. 469; *Hayes v. Williams*, 17 Colo. 465; *Colo. M. & I. Co. v. Rees*, 21 Colo. 435.

Proximate cause is defined as " that cause which, in natural and continued sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which that result would not have occurred." *Lutz v. A. & P. R. Co.*, 53 Am. & Eng. R. R. Cases, 478; 16 Am. & Eng. Ency. of Law, 436; or " that cause which immediately precedes and directly produces an effect, as distinguished from a remote, mediate, or predisposing cause." *B. & M. R. Co. v. Budin*, 6 Colo. App. 275.

It is the duty of an employer to make reasonable efforts to keep machinery and appliances used by his employees in suitable condition for use. This is one of the duties which he is bound to perform, and cannot be delegated, so as to exonerate him from liability to an employee who is injured by the negligence of a coemployee charged with the performance of such duty, in failing to do so; for the employee so charged is the representative of the employer, and not a coservant with the one who sustains an injury by the negligent performance of such duty, and the act or omission of the

employee in this respect is that of the employer, irrespective of the grade of the employee whose negligence caused the injury. *Wells et al. v. Coe*, 9 Colo. 159; McKinney on Fellow Servant, § 32; *Brann v. C. R. I. & P. Ry. Co.*, 53 Iowa, 595; *N. P. Ry. Co. v. Herbert*, 116 U. S. 642; *Corcoran v. Holbrooke*, 59 N. Y. 517; *Fuller v. Jewett*, 80 N. Y. 47.

If the negligence of the master is the proximate cause of an injury to an employee, he is not relieved from responsibility, because the negligence of a coemployee contributed to such injury. McKinney on Fellow Servant, § 31; *Grand Trunk R. Co. v. Cummings*, 106 U. S. 700; *Town v. Mich. C. R. Co.*, 47 N. W. Rep. 665; *Cone v. Del., L. & W. R. Co.*, 81 N. Y. 206; *Cayzer v. Taylor*, 10 Gray, 274; Thompson on Negligence, note 10, p. 981.

The engine upon which deceased was employed was derailed by the open switch, which was left in that condition by the neglect of the employees on the freight train. The affirmative signal given by the fireman on the engine of the freight, that the track was clear, was also negligence; but all these acts were those of coemployees of deceased, and, as held in the previous decision of the case by this court, for such negligence the company is not responsible, and it therefore becomes necessary to inquire whether or not the evidence discloses any negligence on the part of appellant which directly contributed to the result which followed the negligent acts of the employees of the freight train. The claim of appellee is that the absence of the cupola light was due to the negligence of appellant, and that its presence would have prevented the accident.

The rules require that two or more red lights shall be carried on the rear of each freight train after sunset; that when a freight is sidetracked for the purpose of allowing another to pass on the main track, these lights must be turned or removed, and green displayed toward the expected train as soon as the track is clear, i. e., the switch reset. In order to comply with this rule as a signal to a train approaching from the rear, the tail lights would be turned so as to display

green toward the expected train, and if a red light was carried in the cupola, it would be necessary to remove that before the engineer of the approaching train would understand that the track was clear, for with a red light displayed in the cupola, although the tail lights displayed green, he would be warned that something was wrong, because the signals were not right, and, red signifying danger, would signal him to stop. The employees of a train approaching from the front could not see the red tail lights, but could see one in the cupola; they would also see the green displayed by the inside tail light, which, alone, would indicate that the track to the rear was safe; but with the red from the cupola, they would understand that something was wrong, because, under the rules, that light would be removed if the switch had been properly adjusted, and being a signal of danger, would mean "stop"; so that in order to comply with the rules, and carry red lights by means of which approaching trains, attempting to pass another upon a sidetrack, either from the rear or front, would be signaled, this becomes the most important red light upon the train, for it serves two purposes when a train has turned out to permit another to pass from the front to the rear, first, upon being taken down it is a signal to the employees of the train upon the sidetrack to cover the headlight on the engine of such train; and second, if an employee should negligently, as in this case, cover such headlight without being signaled that the switch was closed, such negligence would not result in an accident to an approaching train, for the reason that the engineer of such train would see the cupola light, and bring his train to a stop; and though there may be, in railway usage, a distinction or difference in the use of the words "meet" and "pass," as applied to a train passing another from the front to the rear, or in the opposite direction, we cannot agree with the contention of counsel, that the rules regarding signals are susceptible of a construction which recognizes that difference. To do so, would be to inject an ambiguity which does not now exist, create confusion where there is now a harmonious

whole, and make an exception to the rule that red signifies danger, when no such exception is given, because rule 74, when read in connection with the others and the evidence relating to the manner lights upon a train are displayed, and how they are used as signals, is perfectly clear, and if followed, will prevent accidents of the kind which happened to the passenger train in this case, whether such train is attempting to pass one upon a sidetrack, either from the front or rear; and is a prudent provision by which those nearest the point of danger will, by their affirmative act, indicate to the approaching train that all is right; and, while it is true, as contended by counsel for appellant, that the latter part of this rule directs that the headlight of an engine waiting for a train to pass from the front, must be covered as an affirmative signal to the approaching train, we find nothing in this or other rules which makes the distinction based upon the direction a train is moving which one upon a sidetrack is waiting to let pass, as contended for by counsel for appellant; because nowhere in the rule is the word "meet" used, but only the word "pass," and attaching to the words employed, their ordinary English significance, we find that the rule provides specifically what particular signals shall be given by a train waiting for another to pass, as determined by the direction from which such train will approach, and the evidence clearly justified the jury in finding that, had a red light been displayed from the cupola of the freight train on the night in question, the accident to the engine of the passenger train would not have occurred; because its presence would have at once warned the engineer of that train of the condition of the switch, and his train being under control, with a distance of not less than between 700 and 800 feet to run, and probably much more, after he passed the engine of the freight, before reaching the open switch, there was no evidence which rendered the result, if the light had been up, at all problematical.

It is contended by appellant that the rules do not provide for a red light in the cupola of a caboose. Literally this is true; nor do they designate where any of the red lights on

the train shall be carried, except on the rear; but they provide for two or more.   The cabooses were constructed with the view of carrying a red light in the cupola, and admitting evidence that it was the custom to carry one, so displayed, at night, was but evidence of the fact that the company, in compliance with the rules on the subject, carried this third light in a certain way, and which, in fact, was necessary to be so carried, in order that the rules regarding the giving of signals by means of lights might be fully complied with. For the purpose of displaying this light, a particular kind of lamp was required, and one was specially constructed for this purpose.   This was one of the appliances which the company was bound to furnish for use upon its freight trains; it delegated this duty to the employees using such light; they were required to keep it in good order, and ready for use, and their failure to do so, or ask for or obtain another during the time the regular one was being repaired, was the act of appellant, in so far as other employees might be affected by such neglect; so that the evidence on this subject was ample to warrant the jury in finding that the omission of the employees charged with this duty was the omission of their principal in this respect, and negligence upon its part, in so failing to equip this freight train with that necessary appliance for its safe operation; and under the evidence and the findings of the jury on the two main questions in the case, we must answer in the affirmative the very pertinent question propounded by counsel for appellant, in oral argument: Is the presence or absence of a red light in the cupola of a caboose, standing upon a sidetrack, a signal to a meeting or passing train?

It is claimed that the instruction requested by appellant, to the effect that if there were other lights or lanterns in the caboose, which might have been used in place of the cupola light while it was being repaired, then the defendant cannot be held liable in this action, should have been given.   Had there been a lamp in the caboose which could have been used in the place provided for the cupola light, possibly this

instruction should have been given, but we will not pass upon that question, because there is no evidence upon which to base it; and although there was a red lantern which might have been fastened to the outside of the cupola, there is no rule requiring employees, in the absence of the regular cupola lamp, to do so; and their failure to take this precaution, under such circumstances, will not relieve their principal from responsibility for failure to supply the usual and specific lamp for a particular purpose and place.

Had it not been for the open switch no accident would have occurred to the engine of the passenger train on account of the absence of the red light from the cupola of the caboose; but if the light had been present, the jury found the accident could not have happened, so that the absence of this light was the prime factor in causing the engine to be derailed; and because the employees of the freight were guilty of acts of negligence, which contributed to the accident, the appellant is not relieved from the result of its own, where, as in this case, notwithstanding the negligence of the freight crew, no accident would have occurred had it not been also guilty of negligence upon its part.

The only remaining question to consider is that based upon the exception of appellant to the special interrogatories propounded to the jury, the objection being that they were so framed and worded as to indicate to them just what answer was required. Special questions submitted to a jury should be carefully drawn, and call for a direct answer, and although they might be leading if propounded to a witness, that is not an objectionable feature when propounded to a jury, for they are disinterested, and would not be controlled in their answer for the same reason that a witness might, if asked a leading question. Besides, the questions propounded here relate to the very issues upon which the case turned, and called for an answer, either yes or no; and that they were so framed that none other could be given is not objectionable, nor do we think that either of these questions were so worded that they indicated that a certain answer was desired.

The case was fairly and intelligently submitted to the jury; the evidence fully sustains the findings on the issues presented, and the judgment of the district court is, therefore, affirmed.

*Affirmed.*