[No. 3926.]

## THE CARLETON MINING & MILLING CO. v. RYAN.

1. NEGLIGENCE—EMPLOYER AND EMPLOYEE—SAFE PLACE TO WORK—VICE-PRINCIPAL.

An employer is required to use ordinary care in providing a reasonably safe place for his employees to work in, and an employee to whom is delegated the performance of work which involves this duty becomes the representative of the employer and negligence in the performance of such work by such employee is negligence of the employer, as to other employees engaged in different work.

2. SAME—EVIDENCE.

Defendant, a mining compony, was engaged in sinking a shaft and it became necessary to extend the water pipe connected with the pump. Deceased assisted in placing two stulls to support the pipe, one of which was secured and the other was not. There was testimony to the effect that the chief timberman in charge enquired of the pumpman how far apart the stulls should be placed and was informed that one stul should not be permanently fastened until the pipe was laid. That the timberman cautioned deceased to be sure and nail the stull when the pipe was laid. After this the timberman had nothing further to do with the work and the deceased and others went to work under the direction of the pumpman whose duty it was to supervise the putting down of the pipe. After the pipe was laid enquiry was made of the pumpman if the stull should not be nailed and he replied in the presence and hearing of deceased that he would attend to nailing the stull, but failed to do so. Three days later deceased and others went to the bottom of the shaft and in moving the pump the stull fell and killed deceased. Held that there was evidence tending to show that the pumpman occupied the position of vice-principal with reference to the work being done at the time of the injury and that plaintiff had a right to rely on his promise to secure the stull, and tending to prove culpable negligence on the part of the company, and the absence of contributory negligence on the part of deceased, and that the testimony would sustain a verdict for plainiff if the jury were properly instructed.

26

3. NEGLIGENCE—EMPLOYER AND EMPLOYEE—INSTRUCTIONS.

In an action for damages against a mining company on account of the death of an employee alleged to have been caused by defendant's negligence, the following instruction was given to the jury: "The jury is instructed that the rule which obtains in the state of Colorado is that for the acts of a vice-principal done within the scope of his employ- ment, and such as properly devolve upon the master in his general duty to his servants, the master is liable; while for all such acts as re- late to the common employment which are on a level with the acts of the fellow-laborer, except such acts as are done by the vice-principal against the reasonable objection of the injured servant, the master is responsible. In other words, the test of liability is the character of the act, rather than the relative rank of the servant." To this instruction an exception was noted as follows: "Defendant then and there, and at the time, duly excepted to the court's giving the foregoing instruction to the jury, and to the giving of each paragraph thereof." Held that the instruction was fatally erroneous in omitting the word "not" before the word "responsible," and that the exception was sufficient to raise the question on review. Mr. Justice Steele dissenting.

*Appeal from the District Court of Lake County.*

*On petition for rehearing.*

Messrs. WOLCOTT, VAILE & WATERMAN and Mr. Wm. W. FIELD for appellant.

Messrs. PATTERSON, RICHARDSON & HAWKINS for ap- pellee.

Mr. JUSTICE GABBERT delivered the opinion of the court.

This action was commenced by appellee to recover of appellant damages resulting from the death of her son, caused by the alleged negligence of the com- pany. The latter denied that it was guilty of negli- gence, and contended that the death of the son was the result of his own negligence and that of his fel- low servants. From a judgment in favor of plaintiff, he defendant appeals.

Deceased was killed by a stull falling down a shaft, in which he was employed by the company. The vital proposition involved, as presented by the assignment of errors, argued by counsel for appellant, is, whether or not the testimony tends to establish that neglect to properly secure this stull was negligence for which the company is responsible. The complaint was framed and the cause tried by plaintiff upon the theory that the defendant was guilty of negligence in failing to provide a reasonably safe place for deceased to work in, while the defendant contends that the failure to secure the stull was the neglect of the deceased, or that of his fellow servants. In order to determine these questions, it is necessary to briefly review the evidence bearing on the issue of negligence, as made by the pleadings, not, however, for the purpose of determining the facts from conflicting testimony, but to ascertain if there is evidence tending to prove that the proximate cause of the death of the son was negligence for which the company is responsible, or conclusive on the question of contributory negligence on the part of the deceased, which would bar a recovery.

The company was engaged in sinking a shaft, and it became necessary to extend the water pipe connected with the pump used in keeping the shaft clear of water. For this purpose deceased asssited in placing two stulls some distance from the bottom of the shaft the purpose of which was to support the proposed extension of pipe. One stull was securely fastened, and the other not. As to what occurred when the work reached this stage, the evidence is in some respects conflicting. There is testimony to the effect that the principal timberman who was assisting, or had charge, sent one of the parties engaged in the

work to the pumpman, to ascertain how far apart the stulls should be placed; that the latter replied that one stull could not be permanently fastened until the pipe was put in; that the timberman then left, cautioning deceased and a co-employee who was assisting "to be sure and nail the stull when they got their pipes down through." From this time it does not appear that the timberman had anything further to do with the work in question. Immediately after he left, deceased and others went to work under the direction of the pumpman, to put in the pipe. When this was completed, inquiry was made of the pumpman if the unsecured stull should not be nailed, to which he replied, in substance, that he would do so, and on being told by the party making this inquiry, that he would not go down in the shaft unless it was nailed, stated that he would attend to it. The pumpman denies making any such promise. This conversation, it is said, occurred in the presence and hearing of the deceased. The foreman of the company testified that putting down the pipe was part of the pumpman's duty, and that this work was under his supervision. Three days after the pipe had been put in place, the water having been pumped out in the meantime, deceased and others went to the bottom of the shaft, and in moving the pump, dislodged the unsecured stull, which fell and killed him. As a matter of fact, the stull never was nailed, nor do we understand it is contended that it was otherwise properly secured. The material and simple question of fact was, whether the fall of the stull was the result of the negligence of deceased and those who immediately assisted him in placing it, or the negligence of the pumpman. If by the former, there could be no recovery; if by the latter, then the proposition pre-

sented is, does the testimony tend to establish a state of facts from which it can be inferred in law that the relationship of the pumpman to the company was such, that his alleged declaration that he would secure the stull, render the company liable for his failure to do so?

As applied to the conditions proper to consider in this case the law is, that an employer is required to exercise ordinary care in providing a reasonably safe place for his employees to work in. The employee to whom he delegates the performance of work which necessarily involves this duty, becomes his representative, and negligence in the performance of such work by such employee is the negligence of the employer, as to other employees engaged in different work in another place, which the employer is required to make reasonably safe. *Grant v. Varney,* 21 Colo., 329; *D. & R. G. R. R. Co. v. Sipes,* 23 Colo. 226; *D. & R. G. R. R. Co. v. Sipes,* 26 Colo., 17.

Thus tested, it was the duty of the company to exercise ordinary care in rendering the shaft reasonably safe for the performance of the work in which deceased was engaged when killed. If it delegated to the pumpman the supervision of putting down the pipeline, and he had control of this work, he would not, in its performance be a co-employee or co-servant with others working in the bottom of the shaft in the legal sense of these terms, and negligence upon his part in doing this work, which was the proximate cause of the son's death would be the negligence of the company. In other words—in such circumstances, the pumpman, as the representative of the company, would have supervision and control of the placing of a timber which, if not properly secured, would render the shaft dangerous to those working

at the bottom.    In placing such timber he was bound
to exercise ordinary care in making it secure, and
his negligence in not doing so, if that was the proxi-
mate cause of the son's death would be negligence for
which the company must answer.

The next question to determine is, whether or not
the deceased was guilty of negligence which will bar
a recovery.    If deceased and his co-employes (omit-
ting, of course, the pumpman) were alone responsible
for the condition in which the stull was left, then
plaintiff could not recover, because the results fol-
lowing were caused by their own negligence.    De-
ceased knew that the stull had been left unsecured.
According to the testimony, however, he was advised
that it would be nailed by the pumpman.    Three
days elapsed between the time when this promise
was made and the date when the accident occurred.
If, therefore, the promise to nail the stull was
made by the pumpman, as claimed, and he was
charged with the supervision of putting in the pipe-
line, deceased would certainly have a right to rely
upon the promise that the stull would not be left un-
fastened.    There is no evidence which tends to show
that he had any reason to believe that this promise
had not been fulfilled.    If, on the other hand, he and
those assisting him were told by the timberman to
secure the stull, and, without any intervention on the
part of the pumpman, left it unsecured, then he and
his co-employees were guilty of such negligence as
would preclude a recovery in this case.    Thus it ap-
pears from a discussion of the legal propositions
bearing on the issues of negligence made by the
pleadings, in connection with the testimony, that
there is evidence tending to prove culpable negli-
gence on the part of the company, and the absence

of contributory negligence on the part of the deceased.

Of course, it will be understood by counsel, from what we have already stated, that we express no opinion as to what the testimony does, in fact, establish, on the issues of negligence, our purpose being merely to ascertain if the testimony sustains the verdict, if the jury was properly instructed.

Thus far the conclusions announced on the propositions considered are in harmony with similar ones discussed and determined in the original opinion. The only remaining question we shall determine relates to an instruction given by the court, which reads as follows:

"The jury is instructed that the rule which obtains in the state of Colorado is, that for the acts of the vice-principal done within the scope of his employment, and such as properly devolve upon the master in his general duty to his servants, the master is liable; while for all such acts as relate to the common employment which are on a level with the acts of the fellow-laborer, except such acts as are done by the vice-principal against the reasonable objection of the injured servant, the master is responsible. In other words—the test of the liability is the character of the act, rather than the relative rank of the servant."

To this instruction an exception was noted as follows:

"Defendant then and there, and at the time, duly excepted to the court's giving the foregoing instruction to the jury, and to the giving of each paragraph thereof."

There is no question but what the instruction above quoted is erroneous, in that it omits the word 'not" before the word "responsible." In the origi-

nal opinion it was thought that the exception to this instruction was insufficient to raise the question of the incorrectness of the instruction on account of the omission of the word "not," mainly because it might be said that the omission was an inadvertence. Upon further reflection, we are satisfied that the views then expressed on this subject are incorrect. Exceptions of the import of that taken to this instruction have been recognized by an unbroken line of decisions of this court to be sufficient. The distinction between an exception which goes to an entire charge, and one which is directed to a specific instruction, must not be lost sight of. If the exceptions to instructions are so taken that they direct the attention of the court specifically to the proposition of law challenged, then the correctness of the instruction thus pointed out may be determined. In other words —the office of an exception is to point out specifically the proposition of law in the instruction which, it is claimed, is incorrect. It is for this reason that in numerous cases it has been held, that where an exception or exceptions were only directed to an entire charge, a part of which is correct, they are insufficient, because they fail to specifically point out that part of the charge which, it is claimed, is incorrect. Such, however, is not the case with this instruction. It contained, on the whole, but one distinct proposition of law which is not correctly stated. It has never been held by this court that the reasons why an instruction is incorrect must appear in the exception thereto. Therefore, because the exception fails to note the omission of the word "not" as the basis of the exception, is immaterial. True, as argued, the omission of this word is all that can be successfully urged against the instruction, but that renders

it as radically wrong on the proposition of law attempted to be stated as it is possible to express it. Correctly stated, it would present the very essence of the law controlling this case; incorrectly stated it was fatally misleading to the prejudice of defendant. The jury was bound to take the law as stated by the court. It would have no right to supply a word which would result in declaring the law exactly the opposite of that stated in the instruction as given. Hence, it cannot be said that the omission was a mere clerical misprision, or inadvertence of that character that the jury, in examining the instruction, would detect the mistake and supply the omitted word, or would have the right to do so. Nor can we say in this instance, the error is so patent that it will be presumed the attention of the trial court was not called to it. We must presume that counsel direct the attention of the court to the alleged errors in an instruction to which an exception is taken, and we cannot establish a rule of practice which would measure the sufficiency of an exception by the test of whether the error to which it is directed is manifest or not. Such a regulation would require this court to exercise an arbitrary judgment in passing upon instructions to which exceptions have been preserved without a guide which would serve as a uniform rule.

Other questions are discussed in the briefs of counsel as well as in the original opinion, which we do not deem it necessary to determine at this time. The original opinion is withdrawn, the judgment of the district court is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE STEELE dissenting.

I cannot consent to the judgment of reversal. A verdict in the sum of $3,000 only, was rendered against the defendant. The testimony shows that the plaintiff's only means of support was the labor of her son, who was killed, as the evidence tended to show, through the gross negligence of the defendant, and I am unwilling to consent to a reversal upon what seems to me the merest technicality and inadvertence. The omission of the word in the instruction was not called to the attention of the court at the time of the trial, nor upon the motion for a new trial. In the original opinion, the writer of this made use of the following language concerning the instructions:

"The defendant offered twenty instructions, ten of which were given, and error is assigned upon the refusal of the court to give ten of the instructions offered. The first was an instruction to direct the jury to return a verdict for the defendant. This was properly refused. Instructions numbered 10, 11, and 12 were given in substance by the court in another form; but these instructions were properly refused, because misleading,—13 and 14 imply that Ryan should have ascertained whether the stull was fastened or not, regardless of the promise of Whitcomb, and 15 assumes that all who were engaged with Ryan in putting in the stull were his co-employees. Instruction number 16 is equivalent to a direction to find for the defendant; number 17 is not applicable to the facts of the case; and number 18 is misleading and does not state the issue. The instructions were properly refused.

"To each and every instruction given by the court,

except instructions prepared and offered by defend-
ant's counsel, the defendant objected, and, when the
objections were overruled, excepted, in the following
language: 'The defendant, before the giving of the
following instruction, and at the time, objected to the
giving thereof to the jury, and objected to each para-
graph thereof; the objections were overruled by the
court, to which ruling the defendant then and there
duly excepted.' We find that the defendant ob-
jected and excepted in this way to the giving of an
instruction, that 'the company, as a defense to
cause of action, deny generally each and every alle-
gation in the complaint, and further say that if there
was any negligence in the failure to fasten the stull
mentioned in the complaint, it was due solely to the
failure of said Ryan, deceased, to fasten said stull;
and the company further say that if it was not so
due to his failure, it was due to the failure of a fellow-
servant of the said Ryan, and hence the company is
not liable;' and also to this instruction:    'It is the
duty of any employee to exercise all reasonable care
and prudence in performing the duties of the employ-
ment he undertakes, to secure his own safety and
that of his fellow employees.' These objections,
made to each paragraph of the instructions, did not
tend in any way to enlighten the court as to what ob-
jections the counsel really had. There can be no
possible objection to the instruction, or statement,
that the defendant denied the allegations of the
complaint, nor to the statement in the instructions
that the company relied for its defense upon the neg-
ligence of the deceased or the negligence of a fellow-
servant of the deceased; and when the attorney ob-
jects to every instruction given by the court, and to
every paragraph thereof, without calling the court's

attention particularly to the objectionable matter, the court is in no better position to determine what objection the attorney really has than if a general objection were made to the instructions as a whole. The defendant objected in the same form to the following instruction, and now insists that the case must be reversed because the court gave this instruction over its objection:

" 'The jury is instructed that the rule which obtains in the state of Colorado is that for the acts of the vice-principal, done within the scope of his employment and such as properly devolve upon the master in his general duty to his servants, the master is liable; while for all such acts as relate to the common employment which are on a level with the acts of the fellow-laborer, except such acts as are done by the vice-principal against the reasonable objection of the injured servant, the master is responsible. In other words, the test of liability is the character of the act, rather than the relative rank of the servant.'

. "It is apparent that the word 'not' was omitted from before the word 'responsible' through a clerical error; the instruction being, in all other respects, an almost literal copy of the language used by this court in the case of *Deep Mining Company v. Fitzgerald*, 21 Colo. 533. It is not at all likely that the jury were misled by the omission of the word 'not.' The instruction purports to contrast those acts of the vice-principal for which the master is liable with those for which he is not; and, as applied to the facts of this case, it was no doubt understood to mean that for the negligence of Whitcomb in the acts of common labor at the mine, the company would not be liable, unless the negligent act was objected to by Ryan and his fellow-

servants; and not the contrary of this, that the com-
panywould be liable unless the act was objected to.
However that may be, the instruction was undoubt-
edly erroneous, and if properly objected to is su."i
cient to require a reversal of the judgm. nt. We
think it is the duty of the appellate courts no. to i.-
verse a judgment upon a mere technical error wh n
it is apparent from the entire record that the erio.
was merely inadvertent and one which .the court
would have corrected instantly if its attention ha:l
been called to it by counsel. It is the duty of coun-
sel not to permit the court to make an error of this
kind. The mere objection to the giving of the in-
struction and to the giving of each paragraph there-
of, did not call the court's attention to the fact that
the word 'not' had been omitted. In the case of *D.
& R. G. R. R. v. Ryan*, 17 Colo. at page 104, the
court says: 'We are aware that the code, section
357, dispenses with the necessity of taking *exceptions*
to the giving, refusing, or modifying instructions.
The mere formal reservation of an exception by the
defeated party was doubtless considered unimport-
ant and liable to be omitted through inadvertence
and so was dispensed with. But the statute does not
do away with the reason or necessity for making
objections in some *appropriate* way to instructions in
such time and manner as to give the trial court an
opportunity to correct the same if found erroneous.
Any judge in the hurry of a *nisi prius* trial is liable
to err unless aided by the vigilance of counsel. From
time immemorial it has been a well recognized and
most salutary rule of the common law, that if coun-
sel neglect to object or to point out errors occurring
at the trial in such time and manner as will give op-
portunity for their correction, they will not, in gen-

eral, be heard to complain of such errors in a court of review. This rule is so reasonable and so essential to the administration of justice that we cannot believe it could have been the intent of the legislature to overthrow it altogether. Any other rule would enable a party to sit silently by, knowing some error had been committed against his interest of which perhaps no other person was aware at the time, and thus take the chances of a verdict in his favor, while having the sure means of setting aside the verdict if it happened to be against him. The law in this jurisdiction has never permitted, and it is to be hoped that it never will permit such experiments with judicial proceedings. There will always be enough important questions to review in the appellate courts if parties are required to be vigilant to prevent error in the trial courts.'

"And in the case of *Supreme Lodge v. Davis*, 26 Colo. 262, the court says: 'The objections made in no manner enlightened the trial judge regarding alleged errors in the charge which are now insisted upon, nor gave him any opportunity to correct them if any were committed. The practice which has obtained, of making objections without in any manner specifying the reasons upon which they are based, should not be encouraged. Objections so made are of no assistance to the trial judge; in no manner aid him in correcting errors into which he may have fallen in formulating his instructions; operate as a mere drag-net which counsel casts out at random, to draw in at leisure, and examine for results, long after the time the errors alleged to have been committed have caused the mischief of which he subsequently complains, and which he might have prevented by acting in apt time. Such a practice is unfair to the trial

court, as well as litigants, and no objections to instructions ought to be considered sufficient to permit a review thereof, unless so framed that the attention of the trial judge, at the close of his charge, has been specifically directed to the alleged errors therein, and an opportunity thus afforded to correct them.'

"There is no need to present further reasons for the enforcement of the rule as to this instruction.

"Error is assigned to the giving of the following: 'The court instructs you that the burden is upon the plaintiff to establish the material allegations of her complaint by a preponderance of the evidence.' We think this assignment falls within the same rule. The objection now urged is, that the instruction does not enumerate the material allegations of the complaint. No such objection was made at the time."

It will be observed that the original opinion is not based upon the fact that proper *exceptions* were not saved, and that the court has misstated the effect of that opinion when this language is used: "In the original opinion it was thought that the exception to this instruction was insufficient to raise the question of the correctness of the instruction on account of the omission of the word 'not,' mainly because it might be said that the omission was an inadvertence."

In the original opinion it was held, not that an *exception* was not saved, but that a proper *objection* was not made. In the case of *D.&R.G.R.R.Co.v. Ryan*, cited herein, it is expressly held that the code dispenses with the formal reservation of an *exception*, but does not do away with the necessity of making appropriate *objections*

In the case of *Supreme Lodge v. Davis*, also cited the court said: "The objections made in no manner enlightened the trial judge regarding alleged errors

in the charge,    *    *    *    nor gave him an opportunity to correct them, if any were committed. The practice which has obtained, of making objections without in any manner specifying the reasons upon which they are based, should not be encouraged. Objections so made are of no assistance to the trial judge."

In the case of *Beals v. Cone*, 27 Colo. 473, it is held that a general exception in these words, "To the giving of which instructions, and to each and every thereof, the plaintiff by his counsel then and there duly excepted, is equivalent to saving an exception to each instruction separately, but it cannot avail as against any instruction to which it is directed, which contains a correct statement of the law, because it is insufficient to point out that which is incorrect from that which is correct;" citing with approval the two cases mentioned herein. In the case of *Beals v. Cone*, the distinction is not made between *exception* and *objection*, but it is held that unless *exceptions* are so made as to direct the attention of the trial court to the errors of law complained of, this court will not review them.

So, it seems, that when *exceptions* or *objections* are made, they must in some appropriate manner point out the errors complained of, in order that the trial judge may have an opportunity of correcting them, and unless so made they will not be reviewed in this court. And further, that a general exception made at the close of the charge is equivalent to saving an exception to each instruction separately. If, then, the saving of a general exception is the equivalent of an exception to each instruction separately, and if such general exception will not avail against an instruction which contains a correct proposition of

the law because it is insufficient to point out that which is incorrect from that which is correct; it follows inevitably that the noting of an exception or objection to eaeh instruction separately will not avail, if the instruction complained of contains a correct proposition of law, because it does not point out that which is incorrect from that which is correct.

The authorities cited here, it is stated in the opinion, are not applicable, because the instruction in question contains but one proposition of law. I submit that the instruction contains three propositions of law, two of which are correct. The statement "that for the acts of the vice-principal, done within the scope of his employment, and such as properly devolve upon the master in his general duty to his servant, the master is liable," is surely a proposition of law stated correctly. "For all such acts as relate to the common employment which are on a level with the acts of the fellow-laborer, except such acts as are done by the vice-principal against the reasonable objection of the injured servant, the master is responsible," is a proposition of law incorrectly stated. The fact that these propositions were connected and contrasted, by the use of the conjunction *while*, does not make the two propositions a single one. "In other words, the test of liability is the character of the act rather than the relative rank of the servant," is also a proposition of law correctly stated. This instruction, containing, as it does, more than one proposition of law, and one proposition being correctly stated, under the authority of *Beals v. Cone*, the objection and exception should not be considered by this court because not properly presented to the trial judge.

In the brief in support of the petition for rehearing, counsel says that the language employed in the original opinion suggests that counsel was guilty of sharp practice. Inasmuch as the only portion of the original opinion which could possibly bear any such construction is made a part of this, the writer disclaims any intention of charging counsel with improper conduct. It was at the time of preparing the original opinion, and is now, his firm belief that neither court nor counsel knew that the word "not" had been omitted from the instruction in question.