Hurlbut, J.
Action for damages by appellee (plaintiff below) against appellant (defendant below), for the death of plaintiff’s husband while in the employ of appellant.
The evidence tends to show that plaintiff’s husband, Thomas Mulligan, in April, 1894, at_ Pueblo, Colorado, was in the employ of defendant at its steel works in the converter department, and while so employed as a pitman with others in raising and removing large steel ingots from one of the furnaces, preparatory to loading the same on cars, received fatal injuries from which he died the next day. There was a large hydraulic crane which was operated by a young boy, who was located during his *275 employment, on a platform somewhat raised above the general floor of the building. To this crane was affixed a steel chain, to which was attached a pair of tongs or hooks similar in appearance to ice hooks, but weighing about one hundred pounds.' It appears that some four or five ingots, weighing about three thousand pounds each, were moulded from the furnace at what is known as one heating, and as they became sufficiently cooled these tongs were thrown over the ingot desired by a pitman, immediately after which the machinery was set in motion, the ingot raised up above the moulds, and then moved laterally to the point where they were deposited. The tongs were not. pointed like ice hooks but the extremities of the two arms of the tongs were square across. It appears that it was necessary that the edges of the tongs should be kept sharp, for the reason that when the crane raised the ingot the weight increasing on the tongs had a tendency to cause the edges to imbed themselves somewhat in the ingot as it was raised from the mould. On the day of the accident Mulligan* plaintiff’s husband, had placed the tongs upon the ingot in question, which act was termed “dogging the ingot”, immediately following which the ingot was raised by the crane, but not high enough to prevent the bottom from striking the mould. Just at this time it seems that Mulligan had a long pole, to the ends of which'were affixed iron hooks. One end of the pole he placed against the ingot and the other against his stomach, and in this position was endeavoring to push the ingot away from the mould as the crane was traveling from the furnace to the place where the ingots were deposited. While so engaged the *276 ingot slipped from .the tongs and in falling struck the pole violently, driving the end against the stomach of Mulligan, thereby causing the injuries of which he died. ■
The whole case, as to facts, seems predicated upon the condition and use of the tongs. It is alleged in the pleadings and contended by plaintiff that the proximate cause of Mulligan’s injury was the dull condition of the tongs, which permitted the ingot to slip from them. The great weight of testimony, including that of several men in the employ of defendant, and who were present at the time and saw the accident, tended to establish an unsafe and dull condition of the tongs at the time of the accident, and this, as contended for by plaintiff, constituted the negligence of the defendant.
The. record, as well as the briefs in this case, is very voluminous, there being eighty-seven assignments of error, a great proportion of which we apprehend were assigned through an overabundance of caution on the part of counsel.
This case has been before the former court of appeals, from which it was remanded for a new trial. Mulligan v. C. F. & I. Co., 20 C. A. (Colo.) 198.
Thirty-eight separate instructions were requested by defendant, three of which, numbers 1, 27 and 28, were given as requested; six, numbers 4, 7, 20, 23, 26 and 29, were modified and given; eleven, numbers 2, 3, 8, 14, 15, 21, 25, 30, 33, 35 and 37, were refused, but their subject matter was substantially included in instructions number 3, 14 and 16, given by the court. Of the remaining eighteen, 5, 6, 12, 13, 16, 17, 18, 19, 22, 24, 31, 32, 34, 36 and 38, *277 numbers 9, 10, 11, 12, 17, 24, 34 and 38 are not discussed by appellant in its brief, hence require no notice here.
A great proportion of the instructions refused were quite short, being to some extent mere repetition of the subject matter, differing only in phraseology, not in substance, and we think militated against the law as established by our supreme court, or were not applicable to the facts disclosed by the evidence. The instructions given, taken as a whole, are noticeably fair and impartial. If the scales of fairness be questioned, the balance would swing in defendant’s favor, as a number of instructions given appear to be more favorable to it than the testimony warrants. We do not think it necessary to take up the discussion of the court’s action on each instruction, as it would unnecessarily prolong this opinion without any corresponding benefit to the litigants or the profession. We have scrutinized each instruction given, refused or modified, and such scrutiny has failed to create any substantial doubt as to the correctness of the rulings of the trial court in settling the instructions, and we have been unable to discover any reversible error in such rulings.
Appellant contends that its full duty was performed when it furnished the tongs suitable for the work required, and a blacksmith near by ready to sharpen them when necessary; that the tongs were a simple tool, the condition of which, as to being sharp or dull, could be more readily observed and known by the servant than by the master, hence deceased assumed the risk; that deceased was a fellow-servant with the foreman Moriarity, hence no *278 action could be maintained against defendant under such circumstances.
The decisions of the supreme court of this state have established the rule (whatever rule may obtain in other jurisdictions) that it is the duty of the master to use ordinary care to provide the servant with reasonably safe appliances, and to exercise ordinary care to maintain them in proper repair, which duty cannot be delegated so as to exonerate the master from liability. Wells v. Coe, 9 Colo. 159; N. Y. & C. M. S. Co. v. Rodgers, 11 Colo. 6; Grant v. Barney, 21 Colo. 329; D. & R. G. R. Co. v. Sipes, 26 Colo. 17; Colorado M. & E. Co. v. Mitchell, 26 Colo. 284; Carlton v. Ryan, 29 Colo. 401; McKean v. C. F. & I. Co., 18 Colo. C. A. 285; Roach v. D. & R. G. R. Co., 19 Colo. C. A. 204. And further that those to whom is delegated the duty of inspecting the appliances and seeing that they are kept in suitable repair for the purposes required are not regarded as fellow-servants with those employed in the business in which the appliances are used, such persons being considered as representing the master. Colorado M. & M. Co. v. Mitchell, supra; D. & R. G. R. Co. v. Sipes, supra.
Thomas Crowe testified, and the evidence shows without dispute, that at the time of the accident he was in the employ of defendant; that he had been connected with the converter department for nearly thirteen years, and was superintendent thereof; that Con Moriarity was the pit foreman, and that it was the duty of the pit foreman to attend to the repairing of the tongs that were used on the ingots, and see that they were kept sharp and in reasonably safe repair; that when they were out of order *279 it was liis duty to have them taken to the blacksmith shop for sharpening or repair; that it was also his duty to determine whether or not the tongs were dull or out of repair, whether told by the men working or not; that the hydraulic crane and appliances were practically under his control, at all times, and he had authority to stop the machinery and examine the tongs at any time he desired, and that it was his duty to determine whether or not the tongs were sharp. Defendant’s counsel say that “appellant had made it the special duty of the pit foreman to attend to having the tongs sharpened when they needed it.”
The decisions above cited are conclusive against appellant’s contention on the questions decided.
In the light of the evidence disclosed by the record we are unable to agree that the" tongs in question would be considered as a simple tool, so as to bring them within the rule contended for by defendant. About all the cases cited by defendant to sustain the rule refer to small tools easy to handle and manipulate, such as hammers, chisels, ice hooks, etc. Some of the cases refer to parts of machinery, such as knives, drills, cutters and other small parts of a large machine which can be inserted and taken out at pleasure. Here we have a huge pair of metal tongs weighing one hundred pounds, which could have been of no possible use or benefit to defendant except when manipulated by mechanical power. It would have been quite a physical task for an ordinary man to even move or lift them from the ground. As a general rule while attached to the crane they were elevated at some distance above the workmen, and it could not be said that they could be readily *280 seen and observed by -the pitmen and the condition of their points ascertained. The only time that they were in convenient and practical distance .for inspection by the pitmen handling them was when they were lowered .by the crane for the purpose of placing them over the ingot, and we think the jury could readily credit 'the- evidence which tended to show that it was difficult for the'pitmen to observe the points at this particular time owing to the glare and heat from the ingots, and their common intelligence could not have been greatly taxed in order to appreciate the stifling heat which would naturally radiate from three thousand pounds of almost molten steel. However, as to the kind of tool or appliance these tongs were, instruction number fourteen given by the court left the question fairly to the jury to be determined by them. It might be said in passing that the rule contended for by counsel is really an exception to the general rule concerning the assumption of risk by the servant, the exception being clearly stated by Justice Hayt in Burlington & Colorado R. R. Co. v. Liehe, 17 Colo. 283, as follows: ‘ ‘ There are some exceptions to the rule stated * * * In considering the rules above stated due regard must of course be had to the limit of knowledge of the employee as to the machinery which he is called upon to use and the fact that he has a right to a certain extent to rely upon the superior knowledge of his employer. * * * Its application must often depend upon the kind of machinery used, whether intricate or simple in construction. For instance a gardener could not be held guilty of actionable negligence in furnishing a defective hoe or shovel to his employee. It does not *281 rest'with, the servant in such ease to say that the knowledge of the master is superior to his own knowledge, because the knowledge of such implements may well be supposed to be the same to both.” It would appear that instead of being a simple ordinary tool the tongs were a heavy mechanical appliance of a great and powerful crane. They could not be sharpened and kept in repair by the pitmen or workmen, but required the services of a skilled mechanic, such as a blacksmith, to sharpen and keep them in repair. Moreover, it is noticeable from the evidence .thát the defendant itself did not consider the tongs as a simple ordinary tool, for it is undisputed that its paid servant was charged with the specific duty at all times of keeping the tongs sharp and in good repair and securing the service of the blacksmith whenever they needed sharpening. In Finnerty v. Burnham, 54 Atl. Rep. (Penn.) 999, the appellant’s husband was employed as a. laborer by defendant in its locomotive works, and was injured in hoisting a heavy article known as a “taper waist” onto a wagon. The work was done with a crane to which was attached a chain which had a ring in the middle and a hook at each end. The chain was of exceptional size and strength. While the crane was engaged in hoisting the taper waist the chain broke and the taper waist fell on deceased and killed him. It was claimed in this case that the chain was a portable tool kept in stock and could be seen every day by deceased, by reason of which defendant was not liable. The court speaks as follows: “But we do not agree with defendants that they were relieved from the duty to furnish and maintain a reasonably safe chain with which the em *282 ployee was to perform his work, nor that the employee assumed the risk of the defects in the chain which his inspection could- not discover. * * * While not attached, yet in the operation of the crane it (the chain) was nécessarily a part of it (the crane) and without which the services of the employees could not have been performed. * * * It was not a common tool or appliance with which every person of ordinary intelligence is presumed to be conversant. In such case the employer has a right to rely upon his employee to detect any' defects and to protect himself against them, but here the great weight of the object to be placed upon the wagon required a chain of exceptional size and strength exempt from structural defects. As the evidence disclosed, it required an inspection by a person having technical knowledge to discover the insufficiency of or defects in the chain.”
Appellant also contends that there was no evidence that the tongs were dull when applied to the ingot, and that appellant knew nothing of their condition prior thereto, and if dull the law conclusively presumed Mulligan to have known it. There was sufficient evidence to go to the jury upon the question of defendant’s knowledge. One witness after another testified substantially that the tongs were dull and not in proper repair at the time of the accident. As to whether or not the evidence showed that appellant knew the condition of the tongs prior to the accident, we do not think it reaches the issue. The question is, did the defendant know, or could it by reasonable care have ascertained thé condition of the tongs prior to the accident? In the light of the evidence as disclosed by the record the *283 point is scarcely debatable. As above shown, the defendant had a man present whose specific duty was to see to it that the tongs were kept in repair while in use. This duty «contemplated the inspection of the tongs at frequent intervals, and his failure to make reasonable effort to obtain this knowledge was evidence of negligence on the part of Moriarity, who was vice-principal, consequently negligence of the defendant. It was not the duty of deceased to inspect and to ascertain the condition of thése tongs before he used them. Mulligan v. C. F. & I. Co., 20 Colo. C. A. 198; Missouri v. Quinlan, 93 Pac. 632. It may be conceded that if the tongs were dull and not in proper repair while deceased was using them, and it was apparent and must- necessarily have been observed by him in the exercise of ordinary care, then no liability could attach, to defendant, but the question was exclusively within the province of the jury and for them to determine. The jury resolved this issue against defendant.
Counsel also say that it was a conclusive presumption of law that Mulligan knew the condition of the tongs and assumed the risk. This position is based entirely upon the theory that the tongs were a simple tool and that their condition at all times while being used was as well within the knowledge of the master as of the servant. But upon this question the court, as herein shown, has not adopted counsel’s interpretation of the evidence.
Counsel also strenuously contend that Mulligan was guilty of contributory negligence in not properly affixing the tongs to the ingot, and in having the end of the pole against his stomach while the opposite end rested on the ingot at the time it fell. *284 The instructions fairly submitted this question to the jury, and we see no reason for questioning the verdict on this point. It is well settled in this jurisdiction that questions of negligence and contributory negligence are generally for the consideration of the jury. In Colorado Midland Railway Co. v. O’Brien, 16 Colo. 219, the following excerpt is supported by many deci1ions in our own supreme court, to-wit: “There is nothing in the evidence as certified to this court which would justify the removal of the case from the operation of the general rule that ‘questions of negligence as well as of contributory negligence are generally within the province of the jury, which should not be invaded by the courts except in the clearest of cases’.”
Not being convinced of any reversible error appearing on the record, the judgment will be affirmed.

Judgment affirmed.