## KING *v.* OHIO, ETC., R. CO.

### *(Circuit Court, D. Indiana. 1882.)*

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW-SERVANT.

    A master is not relieved from responsibility in all cases when a servant is injured by the negligence of a fellow-servant, but only where the servants are engaged in the same common employment; that is, in the same department of duty, not in departments essentially *foreign* to each other.

2. SAME—LIABILITY FOR INJURY RESULTING FROM DEFECT IN CAR.

    Railroad companies are bound to use due care in seeing that their cars and other rolling stock are maintained in a reasonably-safe condition; and when an employe,—a brakeman, for instance,—in the proper discharge of his duty, is injured from a failure on the part of the company to perform this personal duty, it is liable.

*John A. Henny,* for petitioner.

*Harrison, Hines & Miller,* for receivers.

GRESHAM, D. J. The petitioner, Henry F. Bruning, by this proceeding seeks to recover damages for injuries sustained in coupling cars at North Vernon, Indiana, while in the service of the receiver. The petitioner and others, on the fifth day of January, 1880, were making up a freight train at this point to go south over the Louisville branch of the Ohio, etc., Railroad Company. He was assisting as brakeman in switching and coupling, and finally ran along with the train as it backed up to a coal car, and hurriedly stepped in between this car and the rear car of the train, when they were three or four feet apart, to make the coupling. Instead of meeting or bumping together, as they should have done, the draw-bars passed each other, and allowed the ends of the cars to come together, or so near together as to seriously injure the petitioner. The strip which supported the draw-bar of the coal car and held it up had become unbolted at one end, the nut being missing, and the draw-bar was thus allowed to drop far enough below its proper position to miss the draw-bar of the forward car and pass under it. There was some evidence tending to show that the "dead-wood," which is a block bolted on the end of the car, above the

draw-bar, to assist in keeping the cars from coming together, was imperfect, it being worn away as much as a few inches. If the coal car had not been out of repair the draw-bars would have met or bumped instead of passing, and the coupling would have been made without injury to the petitioner.

This coal car, which belonged to the company and had been in use for nine years, was, it appears from the evidence, brought from Washington, Indiana, loaded with coal, the evening or the night before the accident. The car inspector at Washington testified that he had inspected all cars on leaving that place the day before the accident, and none of them, so far as he observed, were out of repair. And three of the four car inspectors at Seymour testified that they had inspected all trains passing there from the west the same day and the night of that day, two performing the labor together during the day, and the third alone at night, and that the cars all seemed to be in proper condition.

There were no car inspectors at North Vernon at this time, but one appears to have been appointed for that place some months later. This appointment was made, however, it is claimed for the receiver, on account of the great increase of business at this point after the accident. There is no evidence that the coal car, or any other cars, were inspected at North Vernon. The petitioner testified that he did not notice the condition of the coal car until he ran in and took hold of the link to make the coupling, and that he did not discover his peril until it was too late to escape. He was caught between the ends of the cars when they came together, and seriously injured in his right side and chest. The physician who was called in after the accident, and who treated the petitioner for some time afterwards, testified that he found a depression of at least two inches on the right side, the ribs from the fifth down, on that side, being forced in that far; that he did not succeed by manipulation and bandaging in entirely removing this depression; that the right lung and the membrane surrounding it were seriously injured; that some months after the accident he thought, on examination, that he found an accumulation of pus in the lower part of the right lung, corresponding to the place of injury, and tubercular deposits in the top of this lung; that the petitioner was not able to work, and the chances were that he never would be.

During the year prior to the accident the petitioner had an attack of lung fever, from which he seemed to recover, and again went to work. He was a man of average health and strength, and there was

no evidence that he inherited any tendency to lung disease. Nine or ten weeks after receiving the injury he undertook to resume work on the road, but owing to his feeble condition he was compelled to rest at frequent intervals, sometimes for a week or longer. At the time his testimony was taken, which was two years or more after the accident, he was unable to work. It is not denied that his injuries were serious, very painful, and, perhaps, permanent.

It is urged for the receiver that the testimony failed to show want of proper care on his part, or that of his managing agents; that if any carelessness was shown it was the carelessness of the car inspectors, who should have discovered the damaged condition of the car before the accident, and ordered it into the shops for repairs; that the petitioner was compensated by his wages for his services, and all risks incident to his employment, including the carelessness of the car inspectors, who were his fellow-servants; and, finally, that the petitioner, by his own negligence, contributed to his injury by running in between the cars to make the coupling without using his eyes and discovering in time the dangerous condition of the coal car.

It is 100 miles from Washington, where the coal car was loaded, to North Vernon, and from Seymour to the same place the distance is only 15 miles.

It is not denied that the coal car was out of repair and unfit for use at the time of the accident, and in view of its then condition it is probable that the defects already described existed when the car passed Seymour, and even when it was loaded at Washington. These defects, when the car was detached, were plainly visible on examination, but when it was coupled up in a train and the draw-bar thus somewhat held in position, they were more liable to escape observation. But whatever the condition of this car may have been at Washington and Seymour, trains were made up at North Vernon, where the defective car was switched off on a side track to go south over the Louisville branch, and if proper care had been used at this point its damaged condition would have been discovered, and it would have been condemned for repairs instead of having been ordered into the train as it was.

It is not the law in the federal courts, nor is it believed to be the law in all of the state courts, that the master is relieved from responsibility in all cases in which a servant is injured by the negligence of a fellow-servant. The master's immunity is limited to cases where the servants are engaged in the same common employment; that is to say, in the same department of duty. Such immunity does

not extend to cases where the servants are engaged in departments essentially foreign to each other. A servant cannot be held to have contemplated, in the adjustment of his wages, those dangers which arise from the carelessness of fellow-servants, without any reference whatever to the nature of their employment or duties. *Hough* v. *Texas, etc., R. Co.* 100 U. S. 213; *Indianapolis, etc., R. Co.* v. *Morganstein,* 15 Chi. Leg. News. But, without further discussion of the question of the master's immunity, I prefer torest the decision on other ground.

It is his duty to furnish his employes with proper machinery or instrumentalities for their use in the work assigned them, and to see to it that the same are kept in a reasonably-safe condition, or in reasonable repair. He may intrust this duty to others, but he cannot by so doing escape the responsibility for its negligent non-performance. The acts of his agents in this regard are his acts; their negligence is his negligence. This rule applies to individuals, and there is no good reason for exempting railroad and other corporations from its operation. It is true that corporations can act only by their agents, but that is no reason for not holding them to the same personal responsibility as natural persons. Conduct which amounts to personal negligence as against an individual should and does amount to the same thing against a corporation acting by its proper officers or agents. Railroad companies are bound to use due care in seeing that their cars and other rolling stock are maintained in a reasonably-safe condition; and when an employe,—a brakeman, for instance,—in the proper discharge of his duty, is injured from a failure on the part of the company to perform this personal duty, it is liable. *Hough* v. *Texas, etc., R. Co. supra; Railroad Co.* v. *Fort,* 17 Wall. 557; *Dillon* v. *Union Pac. R. Co.* 3 Dill. 319; *Ford* v. *Railroad Co.* 110 Mass. 241; *Gibson* v. *Pac. R. Co.* 46 Mo. 163.

The master is bound to protect the servant, not against all risks, but against risks which could be avoided by the exercise of reasonable care on the part of the master. The brakeman's employment exposes him to constant peril under the most favorable conditions. He is expected and required to act with dispatch in coupling and uncoupling cars, and when he is negligently required by the proper officers or agents to handle cars out of repair, unfit for use and dangerous, and in doing so is injured, perhaps for life, without fault on his part, he should, in justice, have a remedy against his employer. This road and all its possessions were in the hands of a receiver, who was operating it at the time of the accident. He, of course, sus-

tained to the petitioner the relation of master, and the neglect of his proper agent or agents to condemn the coal car and keep it out of use until repaired was his neglect, for which he is liable.

It does not appear from the evidence that the petitioner knew the coal car was out of repair when he ran in, as he was accustomed to do, and as brakemen usually do, to make the coupling, or that, without stopping and looking before running in, he might have seen that it was unfit for use. He testified that he discovered for the first time when he was between the cars, and when it was too late to escape, that the draw-bars would not meet. Knowing that promptness in the discharge of his duties not only recommended him to his employer, but that it was required of him, the petitioner had a right to assume, without inspection, as he no doubt did, that the cars he was required to couple were in a proper state of repair for handling. It cannot be said from the evidence that the petitioner acted recklessly, or that he failed to use due care for his own preservation, and thus contributed to the injury. He earned $45 a month at his business before the accident; he is now 31 years old, and he seems to have been industrious. His injuries were such that he is not expected to recover. It is fair to assume that he will never be able to perform active labor.

I allow him damages in the sum of $4,000, including medicines, medical and board bills, and expenses of nursing.

See *McMahon* v. *Henning*, 3 FED. REP. 353; *Ross* v. *Chicago, M. & St. P. R. Co.* 8 FED. REP. 544; *Gravelle* v. *Minneapolis & St. L. R. Co.* 11 FED. REP. 569; *Miller* v. *Union Pac. R. Co.* 12 FED. REP. 600; *Dunmead* v. *Amer. M. & S. Co.* 12 FED. REP. 847.