## No. 8898.

### RIO GRANDE SOUTHERN RAILROAD COMPANY *v.* CAMPBELL.

1. MASTER AND SERVANT—*Duty of Master as to Appliances.* It is the duty of an employer to exercise reasonable effort to keep in suitable condition for use the machinery and appliances used by his employees.

2. —— *Railway Company,* owes to its employees reasonable care to keep its rolling stock in reasonably safe condition. Inspection and tests must be made at proper intervals, and the company is bound to know the condition of its cars, so far as such inspection suffices.

That the couplings, defect in which was alleged to have occasioned

the injury, "looked all right" when the cars were taken into the train, and that no defect therein was manifest before the accident was held not to establish conclusively that the defect did not exist before the accident.

3. —— *Duty of Servant.* A railway brakeman is not bound to go under the cars of a train upon which he is employed, in order to ascertain the condition of the couplings. A rule of the employer that the couplings "must be examined before the coupling is made," requires no such diligence on the part of the brakeman.

4. VERDICT—*Excessive Damages.* A verdict of $12,075.00 held not to evidence passion or prejudice on the part of the jury.

*Error to LaPlata District Court, Hon. William N. Searcy, Judge.*

Mr. E. N. CLARK, Mr. R. G. LUCAS, Mr. T. M. STUART, JR., Mr. REESE MCCLOSKEY, for plaintiff in error.

Mr. B. W. RITTER, Mr. EDGAR BUCHANAN, Mr. CHARLES A. JOHNSON, for defendant in error.

Opinion by Mr. Justice Allen:

On June 8, 1901, the defendant in error, hereinafter referred to as plaintiff, was in the employ of the plaintiff in error, hereinafter referred to as the railroad company, as a brakeman on a freight train. On the date above named the plaintiff was injured while coupling cars in a train upon which he was braking. Thereafter he brought suit against the railroad company to recover damages, basing his right thereto upon the ground that his injury was caused through the negligence of the company.

The judgment for plaintiff which was obtained as the result of the first trial was reversed in *The Rio Grande Southern Railroad Company v. Campbell,* 44 Colo. 1, 96 Pac. 986. A second trial resulted in another judgment for plaintiff, and the judgment was again reversed in *Railroad Company v. Campbell,* 55 Colo. 493, 136 Pac. 68, Ann. Cas. 1914 C 573. The last trial, in December, 1915, resulted in a verdict in favor of the plaintiff for $12,075, upon which a judgment was entered against the railroad company,

which now brings this case here for review for the third time. Fifty-three alleged errors are assigned, but the principal contention of the plaintiff in error, and the proposition most seriously argued, is that "the evidence fails to show that the defendant (railroad company) was guilty of negligence in the respects alleged in the complaint, and limited by the agreed statement of the issues."

The complaint contained allegations to the effect that the couplers upon the cars were of the oldest style of pin and link couplings, and that couplings could only be made by going in between the ends of the cars that were to be coupled, and make such couplings as the cars came in contact with each other; that while attempting to couple cars, numbered 1050 and 1925 respectively, in the usual and customary way, the couplers or drawheads on both of the cars fell down and gave way, the ends of the cars came together, and plaintiff was crushed and injured between the ends of the two cars. The truth of these allegations is not disputed.

The negligence of the defendant is charged and specified in the following portions of the complaint:

"That each of said cars between which plaintiff was injured, and the drawheads thereon, and the bolts, nuts, irons and beams and other appliances for holding said drawbars in place on said cars so attempted to be coupled by plaintiff were old and decayed, worn, weakened, loose and defective in each of said respects. That some of the nuts and bolts formerly holding said drawbars were lost and gone. That so defective from said causes was said drawbars and their fastenings, that, upon their ends coming in contact, they bent and fell down, and gave to the plaintiff no protection whatever, but allowed the ends of said cars to come together, crushing the plaintiff between them as aforesaid, and the nut at the back end of the drawbar or drawstem where the same passes through the beams and wood composing the lower end of the said car No. 1925, and which holds and secures in place the back end of said drawbar or stem, had been permitted to become loose and insecure,

and in considerable part unscrewed, so that said drawbar and the coupler on the end thereof was loose and insecure, and when the same came in contact with the coupler and the drawbar upon the other of said cars, by reason of said condition, the same turned down and plaintiff was crushed and injured as described.

"That all the defects aforesaid might have been known to the defendant by the use of ordinary care and prudence in the inspection of its * * * cars and their appliances, and in the timely repairing of the same, or substituting proper cars and appliances therefor.

"That, in truth and fact, the said defendant did not know at and before said time of each and all of said defects, but negligently continued said * * * cars and appliances in use in said defective and unsafe condition, and wholly failed to make any careful and repeated inspection of said * * * cars and appliances, and the making of proper repairs thereon, and the substitution of proper * * * cars and appliances in the place of said defective ones."

The evidence shows that the drawheads did fall and cause the plaintiff to receive injuries, at the time, in the manner, and under the circumstances as alleged in the complaint. The evidence is sufficient to support the conclusion that the drawheads dropped down because of a defect or disorder in and of the coupling apparatus of which the drawheads in question were a part, and that such defect consisted principally in a looseness or "play" of each of the drawstems or drawbars. The plaintiff testified that in attempting to make the coupling, he properly inserted the link. The jury were at liberty to regard this testimony as true, and if they did, they would of course properly conclude that the accident was not caused by the failure to insert the link in the proper manner. The cars did not come together with any unusual or severe force or impact, and this fact justifies the belief that the accident was not caused by the impact. Drawheads had been known to turn down because the drawstem had become loose, and under the circum-

stances of this case, it is not a mere conjecture to say that the drawheads in question turned down for the reasons specified in the complaint.

A looseness or play of the drawstems, which were connected with the drawheads in question, was noticed or discovered after the accident by several of the witnesses. Probably some of this looseness or play was caused by the accident itself.   Nevertheless, the facts and circumstances warrant the conclusion that there was a comparatively great deal of looseness of such drawstems prior to the accident, and that such defect, and other defects in the coupling apparatus, as alleged in the complaint, constituted the proximate cause of the accident.   A looseness or play of the drawstems, in itself, was sufficient to permit the drawheads to drop, and thereby cause the accident.   It is reasonable to infer that the jury were justified in finding that the falling of the drawheads, on the occasion of the accident, could not have been due to any other cause, since if the drawstems were in order, and not defective or loose, they would have held the drawheads up and in their proper place.

It is true that the evidence shows that the drawheads were apparently in their proper position when the cars were first taken into the train, and that they fell for the first time when the coupling referred to in the complaint was sought to be made.   The fact that the drawheads did not drop at any time prior to the accident, and that the plaintiff found that the coupling appliances, as he testified, "apparently looked all right" when each of the cars in question were taken up, does not conclusively prove that no serious defect in the coupling apparatus existed before the accident. The testimony discloses, and the fact is not disputed, that these two particular drawheads which fell when coming together were brought together for the first time when the coupling which is connected with the accident was attempted to be made by the plaintiff.   Prior to that time the two cars, numbered 1050 and 1925, bearing these particular

drawheads, were not attached to each other, but were located in different parts of the freight train, other cars being between them. The theory of the plaintiff appears to be that if the drawhead of one car were firmly and properly held in place by a drawstem in good order, such drawhead could not itself fall or drop, and by remaining in its proper position when pushed against the drawhead of another car would prevent such other drawhead from falling down, even if the latter were loose, and would push a loose drawhead back to the springboard. On the other hand, according to the argument of counsel for plaintiff, if both drawheads which come together are held by loose and defective drawstems, the impact and consequent jarring would cause each of them to drop as the drawheads on cars 1050 and 1925 did drop or turn down at the time of the accident. The jury were at liberty to take this view, and to regard plaintiff's theory as to the cause of the accident as being correct.

Car numbered 1050 was picked up at Porter, and car 1925 was taken up at Bells Spur. From Porter down to and past Bells Spur, and on down to the place of the injury, a distance of about four miles, the freight train ran on a continuous downgrade. There was no upgrade, and no pull nor anything in the operation of the train between these points that would put any strain upon the cars, their coupling appliances, or upon the drawbars which were found loose and out of order. The facts just mentioned and the circumstances hereinbefore referred to warranted the jury in concluding not only that the drawstems on cars 1050 and 1925 were loose and out of order shortly prior to the accident, but also that the defects existed prior to the time the cars were taken into the train.

The plaintiff in error also contends that the "evidence does not show that defendant knew or was chargeable with notice of the defects, if any there were, in said cars." In other words, it is claimed that no negligence, to which the condition of the coupling appliances can be attributed, has been proven.

It is the duty of an employer to make reasonable efforts to keep machinery and appliances used by his employees in suitable condition for use. *D. & R. G. R. R. Co. v. Sipes,* 26 Colo. 17, 23, 55 Pac. 1093. It was the defendant's duty to exercise reasonable care to discover defects in the appliances furnished: *Muldowney v. Ill. Cent. Ry. Co.,* 36 Ia. 463. Railroad companies are bound to use due care in seeing that their cars and other rolling stock are maintained in a reasonably safe condition, and when a brakeman or other employee, in the proper discharge of his duty, is injured from a failure on the part of the company to perform its duty with reference to the safety of its appliances, the company is liable. *King v. Ohio, etc., R. Co.,* 14 Fed. 277. The trial court properly instructed the jury that:

"The duty of the defendant is simply that of ordinary care and caution under the circumstances, and the defendant would only be liable for the result of such defects in said cars and coupling appliances as it had knowledge of, or should have had knowledge of, by the exercise of reasonable and ordinary diligence on its part, in time to remedy the same."

Under this instruction the jury found against the defendant, and we can not say that such finding was manifestly against the weight of the evidence.

There is evidence of the existence of various circumstances from which the jury could reasonably infer that the defendant company failed to exercise due care in keeping its coupling appliances safe. Cars 1050 and 1925, between which the plaintiff was injured, had been used by the defendant for about ten years, and had been during that time in practically constant service upon the railroad, the general condition of which, it was testified, "is curves and grades." The basis of the duty of inspection being the tendency of appliances to deteriorate while in use, it is manifest that the necessity for vigilance on the employer's part constantly increases the longer that use continues. (Note in 41 L. R. A. 80.) The length of time which an ap-

pliance has been in use may be a specific circumstance which puts an employer upon inquiry as to the condition of such appliance. 3 LaBatt, Master & Servant, sec. 1061 (c). The testimony shows that cars 1050 and 1925 were second-hand cars which had been used when they were put in service on defendant's railroad. This fact and the fact that the cars had been used for about ten years by the defendant was a circumstance which the jury were entitled to consider, in connection with other facts, in determining whether or not the company should have known of the defect at and before the time of the accident. There was testimony to the effect that the defect was of such nature that it would readily have been discovered by a car inspector. The fact that it was not discovered tends to prove that no recent inspection had been made. Furthermore, the defendant offered no evidence that an inspection had ever been made, or that the drawstems on cars 1050 and 1925 had ever been replaced or repaired, although drawstems on other cars had to be and were replaced. The defendant company knew the character of its roadbed, the grades and curves of the same, and the effect that constant use on such road would and actually did have upon drawstems, subjecting them to great strain, and requiring them to be frequently replaced. The defendant knew why and to what extent it should take precautions to maintain its coupling appliances in a suitable and safe condition, and the danger involved when drawstems became loose or defective. The jury had a right to infer, from all of the circumstances disclosed, either that the defendant company negligently failed to make inspection of the cars in question, or that the inspection, if any there had been, was careless, insufficient, or negligently made. It is the duty of an employer to inspect or have inspected the appliances with which his employees work. 18 R. C. L. 561, sec. 73.

The inspection and tests must be had and made at proper intervals, and the master is bound to know the condition of his property so far as proper inspection will enable him

to know it.   See note in 41 L. R. A. 74, 75.   The master is chargeable with knowledge of any defect that a proper inspection would have disclosed.   18 R. C. L. 567, sec. 73.

Under the evidence in this case, and in view of the authorities cited, the trial court could not, as a matter of law, find that no negligence on the part of the railroad company had been shown, and direct a verdict for the defendant on such ground.   This being true, the question of negligence was properly submitted to the jury.   *Catlett v. Colo. So. Ry. Co.,* 56 Colo. 463, 471, 139 Pac. 14.

We are also of the opinion that under the evidence the jury were justified in finding that the plaintiff was not guilty of contributory negligence.   The plaintiff testified that the defect was not apparent and that he did not notice it before the injury.   The drawheads were apparently in place, and would seem to be in place, and there would be no obvious indication of danger even if the drawheads were not resting or held squarely against the spring board.   The only way to detect defects in the drawbars would be to get down under the car and give it such an inspection as ought to be given it by a car inspector.   Such close inspection was no part of the duty of the plaintiff.   Rule 204 was not regarded, even by the railroad company, as requiring such close inspection.   While the rule provides that "drawheads, drawbars and coupling apparatus must be examined before coupling is made," it appears from the testimony that trainmen, when acting in compliance with the rule, made the examination only by seeing that everything looked all right, and that the apparatus appeared to be in good order.   This was done in this case when the cars were attempted to be coupled.   The defendant's witness Doze appears to have regarded the rule as having been complied with by the plaintiff.   A close inspection of all parts of the coupling apparatus by trainmen while on their run is impracticable. We do not think that under the circumstances above mentioned the defendant is in a position to claim that plaintiff violated the rule, or to secure any advantage from the fact

that the plaintiff did not make a more thorough inspection of the coupling apparatus than he did.

The evidence is voluminous, and affords room for much discussion and for conflicting views as to its effect. We are of the opinion that there is sufficient competent evidence to support the verdict for plaintiff, and to uphold a finding for plaintiff upon each of the material issues involved in this case. Whatever our view may be as to the weight of the evidence, as to any one or more of the issues of fact, we are not at liberty to disturb the verdict. The alleged errors having reference to the admission or rejection of testimony, if it be assumed that they were errors in any sense, were not of such a prejudicial character as to warrant a reversal, and need not be discussed. The instructions were fair and substantially correct, and in view of the instructions given there was no error in refusing the instructions requested by the defendant.

The verdict for $12,075 is undoubtedly large, but under the evidence we can not find that the verdict is so large as to make it apparent that the jury was influenced by prejudice, misapprehension of the evidence, or corrupt or improper considerations. For this reason the verdict will not be disturbed on the ground of being excessive.

The judgment is affirmed.

Affirmed.

Decision *en banc.*

Decided May 6, A. D. 1918. Rehearing denied December 2, A. D. 1918.